HAGGERTY v. CHICAGO, M. & ST. P. R. CO.

(Circuit Court of Appeals, Eighth Circuit. November 11, 1905.)

No. 2,231.

MASTER AND SERVANT—INJURY OF SWITCH TENDER—ASSUMED RISK.

> Switchyards of a railroad company were on a general level with the top surface of the ties, and in order to drain off the water which would otherwise accumulate thereon a number of small ditches or drains were made, crossing under the tracks between the ties. In the spring it was necessary to clean out such ditches, in order that they might carry off the water from the melting ice and snow. Plaintiff was a night switch tender, who had been employed by defendant in such yards for four or five years, during which time such system of drainage had been in use. While in the performance of his duties one night in the spring, he stepped into one of such ditches, which had been cleaned out the day previous to a depth of from three to six inches, and fell, and was injured by striking the rail. *Held*, that defendant was not negligent in failing to provide him with a reasonably safe place to work, but that the injury resulted from one of the ordinary risks of his employment, which plaintiff assumed.

> [Ed. Note.—Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the District of Minnesota.

Frank D. Larrabee (Mathias Baldwin, on the brief), for plaintiff in error.

H. H. Field (F. W. Root, on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and PHILIPS and CARLAND, District Judges.

CARLAND, District Judge. Haggerty sued the railway company to recover damages for a personal injury received by him while in the

employ of the company. At the close of all the testimony the trial court, on motion of counsel for the company, directed a verdict in its favor, to which ruling counsel for Haggerty excepted, and the case is here on writ of error to review such ruling.

The facts in the case, as they appear from the record, are substantially as follows: The yards of the railway company, at Minneapolis, Minn., are on a general level with the top surface of the ties upon which the railway rails are laid. In order to carry off surface water which may accumulate upon the yards either from the fall of rain or the melting of ice and snow, the section men of the company had for four or five years prior to the date when Haggerty received his injury, excavated from 20 to 25 ditches or drains underneath the several tracks lying upon said yards and between the ties upon which the rails of the track are laid. These drains or ditches underneath the tracks occupy generally the space between the ties as to width and the thickness of the ties as to depth. The drains are necessary to carry off water from the yards of the company so that said yards may not become muddy and slippery in mild weather, and that the standing water may not freeze and prevent the operation of the switches in cold weather. The drains during the summer fill up to some extent, and in the winter are filled up with ice and snow to such an extent that in the springtime, when the snow and ice upon the yards begin to melt, these drains have to be cleaned, so as to let the water escape into larger ditches or culverts, which are covered. The drains in question have never been covered; it being shown by the evidence that to cover them is impracticable, for the reason that, if they were covered, then the water flowing through them from thawing snow and ice would freeze and fill the drains, rendering it necessary to clean them out daily.

On the 6th day of March, 1904, Haggerty was a night switch tender in the employ of the company and performing his duties as such switch tender at the yards in question. He had worked for the company as switch tender at Minneapolis for 15 years prior to the date of this injury, and had worked for 4 or 5 years upon these yards since this system of drainage had been in operation. About half past 2 on the morning of the date aforesaid Haggerty, in performance of his duty as switch tender, was engaged in the act of signaling a Soo passenger train which was entering said yards. He had a lantern, and while signaling said train with the lantern was looking, as he claims, toward the Soo train. While so engaged he stepped into one of these drains before described, which on the day previous had had the snow and ice removed therefrom by the section men. By reason of stepping into this drain, which the proof shows was about 6 inches wide at one end and 11 inches at the other and of a depth of from 3 to 6 inches, Haggerty fell and struck his knee upon the rail of the track and fractured his knee pan or cap. The only testimony which in any way would change the case as thus stated is the testimony of Haggerty, wherein he states that the drain was about 14 inches deep. We are of the same opinion as the trial court in respect to this testimony. Haggerty testified that he did not know that the drain had been cleaned out, and his only opportunity

of ascertaining the depth of the drain was on the night in question, when he stepped into the same, and, as he was immediately taken away in an ambulance, his opportunity of observing the depth of the drain was slight. He saw the drain some weeks after the accident, and testified that it was about the same as at the time of the accident, only not quite so deep. Considering the fact that a drain as deep as Haggerty claims this drain was when he stepped into it would have been useless for the purpose of carrying off the surface water, we think his unsupported statement is rendered incredible by all the other evidence in the case, and that a verdict resting upon his evidence alone as to this point could not stand. The evidence of the other witnesses who have worked for the company upon these yards shows that these drains had existed for 4 or 5 years prior to the date of the accident, and that they were always cleaned out in the spring. It was the duty of the railway company to use ordinary care to furnish Haggerty with a reasonably safe place in which to perform his duties, and it was also the duty of Haggerty to use ordinary care to not unnecessarily expose himself to dangers which he knew, or in the exercise of ordinary care might have known. He assumed, when he entered the employ of the company as switch tender upon the yards in question, the ordinary risks and hazards of the service in which he was engaged, which he knew or which a reasonably prudent and careful man might have known. This case is clearly distinguishable from those cases where a master has allowed holes or culverts to remain uncovered at and about the place where the servant is obliged to perform his duties. The small ditch or drain in question was not what is known as a culvert, but a part of a system found necessary for the carrying off of surface water from the yards into larger drains or culverts, which were covered.

We do not think that under the evidence in the record, the company was negligent in failing to cover this ditch or to place a danger signal there when it was cleaned out. We are of the opinion that the injury which Haggerty received resulted from one of the ordinary risks and hazards which he assumed when he entered the service of the company as switch tender and remained in such service upon the yards in question for the time stated in the evidence.

The judgment of the trial court is affirmed.