## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* GOINS.

### Opinion delivered May 10, 1909.

MASTER AND SERVANT—SAFE PLACE—ASSUMED RISK—CONTRIBUTORY NEGLI-
GENCE.—Plaintiff was employed as machinist's helper at a railway
round-house, and was assisting in removing a cylinder head from an
engine, and .while so engaged his foot slipped in a small ditch used to
drain water from the stalls in the round-house, and wrenched his
back. There was no proof that the place in which he was working
was not reasonably safe. Plaintiff was familiar with such place.
*Held* (1) that there was no proof 'of negligence on the part of the
railway company; (2) that the risk was assumed by plaintiff; (3) that
if the railway company was negligent the plaintiff was guilty of con-
tributory negligence.

Appeal from Crawford Circuit Court; *Jeptha H. Evans,*
Judge; reversed..

### STATEMENT BY THE COURT.

J. A. Goins, appellee, was employed as a machinist's helper
by appellant in its round house at Van Buren. An engine had
been placed over a pit in one of the stalls in the round house, and
the boilers of the engines were washed over these pits in the
stalls. As a result of this washing, the ground about the pits
was made wet, and in order to drain the water from the ground
into the pits, what is referred to in the record as a "ditch" or
as the "bevelling" of the ground was made along and next to
the sill upon which the rails were laid upon which the engines
rested, and holes were bored in this sill to enable the water
more freely to pass into the pit.

Goins was called to assist a machinist in taking off and re-
placing a cylinder head upon an engine during the forenoon,
and while engaged in assisting in lifting the cylinder head back
to its position Goins's foot slipped, and his back was wrenched
and severely injured. He sued appellant for damages, alleg-
ing "that the defendant permitted a small drain or ditch to be
dug, opened and created near the sill of the right hand side of
said pit for the purpose of draining off water that was accumu-
lating upon the floor in said round house or machine shop; that the
water in said ditch or drain caused the ground in and about and

upon which he was required to stand and work to become soft, slippery and slick, so that it would not support and sustain plaintiff upon his feet while in the discharge of his duties toward defendant; that by reason of said negligence plaintiff says his feet were caused to slip from under him into said ditch or drain, and bring about and produce the injuries as herein complained of."

Appellant filed answer, denying each and every allegation of the complaint, and interposed the special pleas of contributory negligence of the appellee and the assumption by him of the risk of injury from the conditions as they existed.

It was eleven o'clock in the morning when appellee was injured. He was thirty-four years of age, had been employed for several months as helper to the machinist, and the business required him to help lift machinery that was very heavy. The cylinder head he was helping to lift weighed about two hundred pounds. It required all the strength appellee had to lift it. The foreman, whose orders he had to obey, had directed appellee "to help put the cylinder head on the engine, and said it was a hurry-up order and had to be done quick." He had to go in a hurry; did not know of the presence of the train at the time he was injured. His work required him to give it his closest attention, and his attention was on his work at the time he went to lift the cylinder head. He was right up next to the cylinder. There was no other place that he could have gone to in order to get down to the work. The drain was a slope five or six inches deep. He had not seen the condition of the ground before receiving his injuries; noticed a little water that had run off when they washed out the boiler that morning, but did not know that the ground was wet and slippery at the time he went there, never noticed it before he slipped; had it not been for the ditch, his foot would not have slipped. When he first went there, he helped the machinist take the cylinder head off. He had been working around there about twenty minutes before he was hurt, within from two to six feet of the place where he went to help lift the cylinder head. When he was not hurried, he gave attention to where he had to stand when he went to lift cylinder heads. When he went to get hold of this cylinder head, he looked to see where his feet were, and his best judgment was that his head was ten or twelve inches from the ground when he took

hold of the cylinder head to lift it. The ditch may have been a foot wide, but was just a little drain, and slopes off. There were two other pits that had the same kind of drains down at the far end of the round house. The above is, in substance, the testimony of appellee himself, and it is stated as strongly in his favor as the record of it will warrant.

The uncontradicted evidence showed that the beveled ditch or drain was for the purpose of draining off the water and mud that came from the boilers when they were washed over the pits. Up to the time that the drain was made, there was so much mud and slop around there the machinists could not work, and the drain was dug to make it dry. The conditions around the ditch had existed about two months before the injury. The mud was practically all cleaned up at the time of the accident. The ditch had been put there in October or November before the injury, which occurred December 31st. There was no difference in the construction of the pit where appellee was injured and the other pits, about twenty in number. From two to six cylinder heads were put off and on daily.

There was a verdict and judgment in favor of appellee for $3,000, from which this appeal has been duly prosecuted.

*Lovick P. Miles,* for appellant.

The court should have directed a verdict for appellant because there was no negligence in the maintenance of the ditch or drain. 141 Fed. 966. Also because the ditch or drain was obvious to most casual observation. 41 Ark. 549; 74 Ark. 376; 95 U. S. 697; 57 Ark. 503; 35 Ark. 602; 82 Ark. 11; 161 Mass. 153; 85 Ark. 460; 82 Ark. 534; 163 Mass. 391; 48 Ark. 333.

*Sam R. Chew,* for appellee.

If the service undertaken was required by a superior, and was such that it demanded one's exclusive attention, and required him to act with rapidity and promptness, it would be unreasonable to require of him that care, thought and scrutiny which might be exacted when there is time for observation and deliberation. 53 Ark. 466. Appellee should be held to have observed only such defects as were patent to ordinary observation. 48 Ark. 333. The doctrine of assumed risks has no place here. Acts 1907, p. 163.

Wood, J., (after stating the facts). The burden was upon the appellee, and he fails to show any negligence upon the part of appellant either in constructing or maintaining the ditch or drain in the condition it was at the time of the injury. He does not show that it was unnecessary, or, if necessary, that it was constructed in such manner as to be dangerous to the employees. He does not show that by the exercise of ordinary care on the part of the appellant the drain could have been constructed in a different manner. Appellee, when asked if there was any cause for the ditch to be constructed in that way, replied, "I don't know." The uncontroverted evidence is that the washing of the engines over the pits in the customary way caused mud and water to accumulate around the pits over which the engines were placed while being washed, and that these small ditches were put there for the purpose of making it dry. It was shown that it was a frequent occurrence to see the ground damp around the pits, that without these ditches the mud and slime would accumulate so that the machinists could not work about the engines. It was not shown by appellee that the drain could have been constructed in such manner as to have made the place around the pit where appellee was working absolutely dry, or that ordinary care to provide a safe place required that the drain be so constructed. There is no proof in this record that the place where appellee was working at the time of his injury was not a reasonably safe place. But, if the place was not reasonably safe, the evidence does not show that such condition was by reason of any failure on the part of appellant to exercise ordinary care to make it so. This case comes well within the facts, and the law announced by the circuit court of appeals in *Haggerty* v. *Chicago, M. & St. P. Ry. Co.,* 77 C. C. A. 282, 141 Fed. 966, where the facts are stated in the syllabus as follows:

"Switchyards of a railroad company were on a general level with the top surface of the ties, and, in order to drain off the water which would otherwise accumulate thereon, a number of small ditches or drains were made crossing under the tracks between the ties. In the spring it was necessary to clean out such ditches in order that they might carry off the water from the melting ice and snow. Plaintiff was a night switch tender; had been employed by defendant in such yards for four or five years,

during which time such system of drainage had been in use. While in the performance of his duty one night in the spring, he stepped into one of such ditches which had been cleaned out the day previous to a depth of from three to six inches, and fell and was injured by striking the rail."

The court said: "It was the duty of the railway company to use ordinary care to furnish Haggerty with a reasonably safe place in which to perform his duties, and it was also the duty of Haggerty to use ordinary care to not unnecessarily expose himself to dangers which he knew, or in the exercise of ordinary care might have known."

The court further said: "We do not think that under the evidence in the record the company was negligent in failing to cover this ditch or to place a danger signal there when it was cleaned out. We are of the opinion that the injury which Haggerty received resulted from one of the ordinary risks and hazards which he assumed when he entered the service of the company."

Not only was there no evidence of any negligence on the part of the appellant, but the testimony revealed a condition about the engine that could not have escaped the notice of any man of ordinary experience and observation, whose senses were alert. The "hurry up" order which appellee received did not, *eo instanti*, put him in a place of danger, with no opportunity to observe his surroundings. He was engaged some twenty minutes in a few feet (two to six) of the place where his injury occurred, helping to take off the cylinder head. The drain and the water and the slippery ground were perfectly obvious to any one who would use his eyes. Although appellee testifies that he had not noticed the condition of the ground, and did not know that it was wet and slippery at the time he went there, he does not say that it was not patent to his observation had he only looked. He says he was hurried, and had his attention on his work. But that is no excuse for not looking when he shows that he was around there twenty minutes before his injury, and shows he had been engaged in work for the company as painter helper and machinist helper for more than a year. As painter helper he had to climb upon the engines, and as machinist helper he carried tools and helped them lift things. He had been in this particular round house work some twenty days before his injury,

and was thoroughly familiar, or could and should have been familiar, with the conditions surrounding these engines. It was not like the case of an emergency call to couple cars with defective drawheads with which there had been no previous opportunity to become familiar, as in *St. Louis, I. M. & S Ry. Co.* v. *Higgins,* 53 Ark. 458, nor is it like the case of *Little Rock, M. R. & T. Ry. Co.* v. *Leverett,* 48 Ark. 333, where the employee was taken away from the place where he had been accustomed to work that was in a perfectly safe condition, and put to work for the first time at a place with which he was not familiar, and where, under the circumstances, it being a dark and cloudy night, the defects were not open to ordinary observation. But this is a plain case of an obvious defect, if one existed, established by the undisputed evidence, even the evidence of appellee himself. As appellee was of age and an experienced employee, and as the condition which he claims caused his injury was perfectly obvious, we are of the opinion that there was no question under the evidence to send to the jury, but that the court should have directed as a matter of law that appellee had assumed the risk as one of the ordinary incidents to the employment in which he was engaged at the time of his injury.

But if we are mistaken in the view expressed, and if the facts show that appellant was negligent, then these same facts will discover, without contradiction, that appellee was also guilty of contributory negligence. For any man of ordinary prudence could and should have discovered the condition of the ground where appellee had to stand when he made the "heavy lift." It was broad daylight, and the ditch and slippery ground could have been seen in a moment. His eyes came within ten or twelve inches of his feet as he stooped to make the lift. The exercise of ordinary care made, at least, a look for his own safety imperative. Twenty minutes was more time than necessary by the use of ordinary diligence to discover a defect, if defect it may be called, so patent as the one revealed by the undisputed evidence in this case. If authority is needed to sustain the conclusion reached it will be found in the following cases: *St. Louis & S. F. Rd. Co.* v. *Marker,* 41 Ark. 549; *Little Rock, M. R. & T. Ry. Co.* v. *Leverett,* 48 Ark. 333; *Fordyce* v. *Stafford,* 57 Ark. 503; *Fordyce* v. *Edwards,* 65 Ark. 98; *Choctaw, O. & G. Rd. Co.* v. *Thompson,*

82 Ark. 11; *Louisiana & Ark. Ry. Co.* v. *Miles,* 82 Ark. 534; *St. Louis & S. F. Rd. Co.* v. *Fritts,* 85 Ark. 460; *Ark. Cotton Oil Co.* v. *Carr,* 89 Ark. 50.

The appellant asked the court to instruct the jury "to find for the defendant." It was error to refuse this request.

The judgment is therefore reversed, and the cause is remanded for a new trial.