## BEAR STATE LUMBER COMPANY *v.* KNIGHT.

### Opinion delivered May 16, 1910.

MASTER AND SERVANT—ASSUMED RISK.—Where a servant knew of the unsafe condition of the machinery with which and of the place where he was employed to work, and made no complaint or request that such condition be remedied, he will be held to have assumed the risk of injury therefrom.

Appeal from Montgomery Circuit Court; *Jeff T. Cowling,* Special Judge; reversed.

#### STATEMENT BY THE COURT.

Appellee was an engineer, employed by appellant in operating a planer at Womble, in Montgomery County, Arkansas. Appellee in his complaint describes the manner of his injury as follows: "On the 17th day of June, 1908, while he was engaged in operating the engine of said plant, the inside bearing of the line shaft situated in the engine room became so heated that it required the plaintiff's immediate attention; that prior to said date above last mentioned the defendant had placed, in the natural and more easy way of access to the point where the said line shaft required plaintiff's attention, an oil tank which completely barred the passage way to the point so affected, and while he was compelled to take a more devious route, and

while pursuing the only route left to him to the point affected, and to which attention was necessary, he had to pass between the main belt and underneath the main belt tightener frame and the shaft, which said shaft extended within six inches of the wall of the room, and that in attempting to pass underneath said shaft plaintiff's clothing was caught by a defective screw in a collar upon said line shaft, and he was violently thrown to the floor and against the frame work supporting the line shaft to which plaintiff, in the extreme emergency of the conditions and his helplessness to otherwise protect himself, caught for support.

Appellee alleges that he was injured through the negligence of appellant in this: 1st. That on the belt tightener shaft there was a defective improvised gas pipe coupler, which had been placed on said pipe for collar, or in place of a collar, and into which said coupler two set screws had been placed on opposite sides of the said coupler, the defect in said coupler being that it contained no countersinks or sinks into which said set screws could be fixed, thereby causing said set screws to stand out over and above the said coupler for the space of an inch, which greatly increased the risk and danger of operating said machinery or repairing or adjusting any defects or irregularities that might occur in the operation of said machinery, by placing an oil tank in such position as to cut off and preclude a passage way for the plaintiff. to pass from any point to and about the machinery·in said building to the overheated line shaft where his duties naturally were, and forcing him to take a more circuitous route to the said line shaft, as above set forth.

The answer denied the material allegations of the complaint and set up the defenses of contributory negligence and assumed risk. Among other things the appellee testified as follows: "I was foreman, and had charge of the job. I put all the machinery in place. Mr. Trumbull was the boss. He claimed to be a machinist. He told me what to do. I was the machinist that did it. I set the engine up, and put it in operation and ran it. I was the only man that ran it up to the time I was hurt. I knew that these set screws were in there, and that the points projected out there. I put them there. I knew they were there when I backed up against them. I stated a while ago that this

cuff where I got hurt was not an up-to-date cuff and set screw. I knew that when I put it on. I had occasion to pass under that shaft a number of times. The oil tank had been in that place a big portion of the time. Something like ten days before the injury Mr. Trumbull said he would make a place for the can."

He further testified: "Mr. Trumbull, the boss, did not caution me about going in there. I did not stop the machinery because I could not afford to. It would have taken me a few minutes to stop the machinery. The bucket I had held ten quarts. The belt is 20 inches across, and about 6 inches from the floor. I could have turned around in here. I have turned in there. There was a little space between the oil tank and the post. The oil tank had been in there a long time. I did not help put it there. Trumbull and Collier put it there. I knew all the time that it was there. I could not go between the oil tank and the wall. The tank was about one-half full of oil. I had no right to move it. It had too much oil in it for me to lift. I did not try to lift it. It was between 6 and 10 inches from the end of the belt tightener shaft to the walls." Appellee was injured, and described the manner of his injury and its extent.

The appellant asked the court to grant the following prayer: "You are instructed to return a verdict for the defendant, Bear State Lumber Company."

The court refused this. The jury returned a verdict in favor of appellee for $250. From a judgment in favor of appellee for that sum this appeal has been duly prosecuted.

*J. I. Alley* and *Hal L. Norwood,* for appellant.

Appellee was guilty of contributory negligence. 90 Ark. 387. When the evidence fails to show any negligence on the part of the master, the plaintiff cannot recover. 76 Ark. 437. It was the duty of the court to declare that there was no cause of action. 76 Ark. 10; 61 Ark. 555; 69 Ark. 568. Appellee assumed the risks incident to the employment in which he engaged. 35 Ark. 605; 36 Ark. 371; 41 Ark. 542; 48 Ark. 333; 54 Ark. 389; 56 Ark. 206; *Id.* 232; 57 Ark. 76; *Id.* 503; 58 Ark. 324; 63 Ark. 437; 65 Ark. 98; 66 Ark. 237; 76 Ark. 436; 82 Ark. 98; *Id.* 534; 85 Ark. 460; 89 Ark. 50; 77 Ark. 367;

*Id.* 458; 82 Ark. 11; 90 Ark. 407. It is error to submit to the jury issues upon which there is no evidence to base a verdict. 63 Ark. 177; 77 Ark. 20; 67 Ark. 147; 69 Ark. 489. The jury should have been instructed that plaintiff might have known the danger to which he was exposed. 77 Ark. 548. Abstract instructions should not be given. 56 Ark. 457; 63 Ark. 563; 70 Ark. 136; 74 Ark. 19; 77 Ark. 20; 26 Ark. 513; 33 Ark. 350; 36 Ark. 641; 41 Ark. 282; 42 Ark. 57. It is error to tell the jury that they may believe or disbelieve any witness. 59 Ark. 122; 68 Ark. 337; 72 Ark. 436.

*Gibson Witt* and *Pole McPhetrige,* for appellee.

Plaintiff was justified in remaining in the service. 54 Ark. 289. An employee is not required to look for or expect danger. 90 Ark. 228. The test as to whether the case should be submitted to the jury is not whether the court, if sitting as a jury, would have rendered a verdict in favor of plaintiff. 80 N. Y. 622; 48 Wis. 520; 83 N. Y. 574; 26 Vt. 608; 109 U. S. 478. It is the master's duty to repair defects in appliances when he knows of them. 87 Ark. 321; 83 Ark. 318; 90 Ark. 227.

WOOD, J., (after stating the facts). The court erred in not granting the prayer of appellant. Appellee, according to his own evidence, knew of the unsafe condition of the machinery and of the place where he had to work. He entered upon and continued in the service of appellant, knowing the condition of the collar and set screws. He made these, and he continued to work for a long time knowing the location of the oil tank. As stated by counsel for appellant: "Appellee was the architect of his own misfortune." The dangers were obvious, and he assumed the risks of them. *St. Louis, I. M. & S. Ry. Co. v. Goins,* 90 Ark. 387, and cases there cited. The evidence shows that something like ten days before the injury the manager said "that he would make a place for the oil tank." But this evidence is hardly sufficient to show that appellee continued in the service of appellant upon the latter's promise to repair. For the evidence shows that appellee had worked there for a long time with the oil tank in the same location it was at the time he received his injuries. It does not appear that he ever protested against the location of the oil tank, or that he had

ever requested appellant to change it. For aught that the evidence shows to the contrary, appellee was perfectly willing to continue in the service of appellant with the oil tank in the situation it was at the time the injury occurred.

For the error in refusing appellant's prayer the judgment is reversed, and the cause is remanded for a new trial.