### THE BUENA VISTA VENEER COMPANY *v.* BROADBENT.

### Opinion delivered April 7, 1913.

MASTER AND SERVANT—PATENT DANGER—DUTY TO WARN.—A master is not bound to warn and instruct his servants as to dangers which are patent and obvious; and where the servant is twenty-eight years old, of average intelligence, able-bodied, and had worked about the millyard for a year, an instruction that the master owed the servant a duty to warn him, even if the danger was patent, because of his inexperience, is erroneous.

Appeal from Prairie Circuit Court, Northern District; *Eugene Lankford,* Judge; reversed.

#### STATEMENT BY THE COURT.

This was an action brought by Dora C. Broadbent, administratrix of the estate of Charles Broadbent, de-

ceased, against the Buena Vista Veneer Company to recover damages alleged to have resulted from the negligence of the defendant in wrongfully causing the death of the deceased. The action was brought to recover damages for the benefit of the next of kin of the deceased and for his estate.

The facts, so far as are necessary to a determination of the issues raised by the appeal, are substantially as follows:

The defendant owned and operated a sawmill and veneering plant in the town of Des Arc. The veneering plant and sawmill were located just below the town on the west bank of White river. The Rock Island railroad runs along the west side of the plant and the yards are between the railroad and the mill property. At the rear of the veneering plant and abutting the east end thereof are four large vats used for heating and steaming the logs out of which veneer is to be cut. The logs are drawn up from the river to the drag saw and from there are put into the vats. After they are sufficiently steamed and heated, they are drawn out of the vats at the end next to the mill and peeled preparatory to being run through the lathe. The vats are about seven feet deep and the water is up to within eighteen inches of the top. The vats are covered for about thirty feet and to within about six feet of the wall of the end adjoining the veneer mill. The open end of the vats are about six feet wide and about seven feet long. The planks which cover the vats become drawn on account of the hot water and they are broken by the action of the logs striking against them as they are being moved towards the end of the vats. The planks in the covering of the vats are renewed as fast as they become broken or defective. The ends of the vats next to the veneer mill are left open so that the logs can be drawn out of the vats into the mill. Charles Broadbent was injured on the 15th day of June, 1912, and was at the time an able-bodied man, twenty-eight years of age and of average intelligence. He had worked in the mill yard in various capacities for most of

the time of the year prior to the time that he received the injuries which resulted in his death. He had not, however, been engaged in the work of dragging logs out of the vat and peeling them until the morning he was injured. On that morning the manager of the mill directed W. S. Carter, a Mr. Newhart and himself to drag the logs out of the vat and to peel them. The water in the vats was so hot that any one working around them could feel the heat. The manager told them to be careful about their work but gave them no other instructions in this respect.

W. S. Carter, in regard to the manner in which the accident occurred, testified substantially as follows: At the direction of Mr. Hall, the manager of the mill, we went over to the middle vat and began work. Hall went with us to show us how to drag the logs up. Mr. Broadbent came around on the vat and Mr. Hall pitched him a hook. Mr. Newhart hooked the first log. Mr. Hall was going to pull the lever to show me how to drag the logs up. Mr. Broadbent went down the steps where the lever was and went around on to the covering of the vat. There was an open space between the cover of the vat and the mill about five feet wide. Broadbent went around back of this open space on to the covering of the vat. I do not know what he was going to do. He walked along the covering of the vat around to the north end of the open space in the vat and started to walk across a plank back to the mill. The plank tilted and he fell into the vat and was scalded. Subsequently he died from the injuries received. A few days before the injuries were received, this particular vat had been cleaned out and repaired and this was its first use afterwards. In some manner not shown in the record a plank about five or six feet long, two inches thick and eight inches wide had been placed across the open space of the vat, at the north end with one end resting on the north wall of the vat about six inches from the north wall and the east end resting on the north wall of the vat, partly on and partly off. Broadbent started to walk along this

plank at its east end and that end, being partly on and partly off the wall of the vat, tilted and precipitated him into the boiling water of the vat.

J. T. Hollingsworth testified: At the time Broadbent received his injuries I was engaged in running the bull wheel at the mill. The bull wheel is on the east side of the mill between two veneer cutters and is used to pull up logs from the river. It is nearly between the two sets of vats. In pulling logs from the river we stop them at the drag saw just about thirty feet from where I stand at the bull wheel. The drag saw is east of the vats and right at the end of the two on the south side. When I first saw Mr. Broadbent on the morning of the accident, he was standing on the inside of the mill right up by a post. The next time I saw him was at the corner of the vat where he fell in. He was around there helping to get the logs out and he had stepped on a plank which was not fastened. It was laying about half of it on the north wall of the vat and he had walked out on it and it turned over with him. I saw him when he stepped on the plank and he stepped on the plank on the west end of it; that is the end next to the mill. In hooking the logs it is occasionally necessary to go around the walls of the vat but never to go across the open space. They use hooks from back of the opening and both sides of the opening. Rolling the logs around in the water breaks the planks in two and new planks have to be put in their places. The top of the wall of the vat is about twelve inches wide and the plank from which Broadbent fell was about eight inches wide.

Hollingsworth testified that he could see the ends of the plank and could see that it was only partly on the wall. On the other hand, Carter testified that from where he was the plank appeared to be placed on the north wall of the vat.

There was a verdict for the plaintiff and the defendant has appealed.

*Ashley Cockrill,* for appellant; *H. M. Armistead, R. R. Lynn* and *Trimble & Trimble,* of Counsel.

1. Where a mature man of ordinary intelligence, working about a vat of hot water, attempts to go across the vat walking on a plank which is obviously insecure, if he falls into the vat and is injured, no recovery can be had, even though he was inexperienced in the particular work he was undertaking to do, because, the danger being obvious, he assumed the risk, and, being so open and apparent, he was guilty of contributory negligence in attempting to do so.

The rule requiring a master to warn an inexperienced servant against patent defects does not apply in this case. 39 Ark. 17, 38; 58 Ark. 217, 228; 73 Ark. 49; 56 Ark. 206, 210; 93 Ark. 153, 155; 76 Ark. 69; 1 Labatt, Master & Servant, § § 238, 247; 82 Ark. 534; 105 Ark. 247; 1 Labatt, Master & Servant, § 394, and cases cited on the subject of risks every adult is presumed to comprehend without special experience. See also 37 N. E. (Mass.) 368; 48 N. E. (Mass.) 757; *Id.* 1079.

2. The court's instructions were inapplicable to the facts in the case, instruction 5 being particularly so because of Broadbent's maturity and general experience and no instructions to him were necessary concerning the danger.

*W. A. Leach* and *F. E. Brown,* for appellee.

1. A master is bound to exercise ordinary care in furnishing a reasonably safe place for his servant to work on, whether it is of simple character, or dangerously situated, and it is his duty to exercise ordinary care to make reasonable inspection to see that the place is safe. 1 Labatt, Master & Servant, § 7; 92 Ark. 204; *Id.* 305; 91 Ark. 102; 90 Ark. 223; 79 Ark. 437; *Id.* 20; 95 Ark. 529; 91 Ark. 343; *Id.* 389. And if he fails to exercise such care, tested by the circumstances, the character of the employment, the facts in the case and commensurate with its requirements, he is liable. *Supra;* 87 Ark. 321; 83 Ark. 318.

2. The servant does not assume the risk of any dangers arising from the negligence of the master unless he is aware of that negligence and appreciates the danger. He has the right to rely upon the assumption that the master has performed his duty of exercising ordinary care to furnish him a safe tool, appliance or place to work, in the absence of any knowledge on his part to the contrary. *Supra;* 93 Ark. 464; 92 Ark. 102; 90 Ark. 555; 89 Ark. 427; 78 Ark. 379; 70 Ark. 395; 68 Ark. 316; 67 Ark. 209; 26 Cyc. 1197, 1199; *Id.* 1218; *Id.* 1217; 57 Ark. 160; 56 Ark. 232; 71 Ark. 56; 53 Ark. 117; 89 Ark. 424; 77 Ark. 367; 90 Fed. 298; 86 Ark. 507; 83 Ark. 567.

The question whether the risk was one that could be assumed, and whether Broadbent did assume it, was one of fact for the jury to determine. *Supra;* 65 N. W. (Mich.), 592.

3. The question also whether he was guilty of contributory negligence was, under the facts of this case, a question for the jury, and not for the court to settle as a matter of law. 29 Cyc. 645; 89 Ark. 522.

It is only when the facts are undisputed and are such that reasonable minds may draw but one conclusion from them, that the question of negligence is ever considered one of law. 91 Ark. 86; 88 Ark. 20; 87 Ark. 101; 85 Ark. 479. See also 101 Ark. 564; 98 Ark. 228; 97 Ark. 328; 92 Ark. 502; 91 Ark. 88; 17 Mich. 126; 28 Vt. 183; 49 Pa. St. 63.

HART, J., (after stating the facts). It is first insisted by counsel for the defendant that the court erred in giving to the jury, over their objection, instruction numbered 5, and we think they are right in this contention. The instruction is as follows:

"It was the duty of the defendant to exercise ordinary care to furnish the plaintiff with a reasonably safe place in which to perform the duties of his employment and reasonably safe means, instruments and appliances with which to perform his duties, and to exercise ordinary care to maintain them in that condition and also,

if the plaintiff was inexperienced, and, for this reason, did not know of or appreciate the dangers of his imme-ﬞ diate employment, if any, and defendant knew or ought to have known this in the exercise of ordinary care on its part, then it was the defendant's duty to instruct him as to both latent and patent dangers, so that the deceased would be enabled to perform his duties in safety to himself. If defendant failed to properly discharge any of these duties to plaintiff, in so far as they are covered by the allegations of negligence in this case, and, by reason of such neglect or failure of defendant, plaintiff was injured while using due care himself, and in the line of his duties and when he had not assumed the risk, then the defendant is liable in this action. If defendant performed his duty to the plaintiff as above indictated, or if plaintiff was himself wanting in ordinary care for his own safety, contributing to his injury, or if the plaintiff had assumed the risk, in either case you should find for the defendant.''

The vice of the instruction is that the court in effect told the jury that even if the danger was patent the defendant owed Broadbent the duty of warning him because of his inexperience. Broadbent was twenty-eight years old and of average intelligence. He was a stout, able-bodied man and had worked around the mill yard in various capacities for the most of the time of the year preceding the accident. The fact that the water was hot was apparent to any one walking around the vat. There was no evidence tending to show that any special training or warning was necessary to enable Broadbent to do with safety to himself the act in the performance of which he was injured. A master is not bound to warn and instruct his servant as to dangers which are patent and obvious. *Louisiana & Ark. Ry. Co.* v. *Miles,* 82 Ark. 534; *Railway Co.* v. *Torrey,* 58 Ark. 217.

It is earnestly insisted by counsel that the court erred in not directing a verdict for the defendant, and it must be admitted that this is an exceedingly close question. The only theory upon which the plaintiff can

recover is that the defendant created a deceptive condition and that there was present an element of concealed danger or deceptiveness of the danger of walking on the plank. It is the theory of the plaintiff that the plank appeared to be laid squarely on the top of the north wall, and was apparently intended as a covering to protect the wall. On the other hand, the defendant claims that it was perfectly obvious that the plank was laid loosely along the top of the wall of the vat, and its insecure position was patent to a casual observer. The record shows that Mr. Hall and Mr. Newhart were present when the accident occurred and it might be inferred that they saw it. They were not introduced as witnesses in the case. On a new trial they may be introduced as witnesses, and their testimony may shed further light on how the accident happened. Hollingsworth and Carter differ as to which end of the plank Broadbent walked on when he fell into the vat. Carter says that he went on to the plank from the west end and that the plank appeared to him to be on the north wall of the vat. Hollingsworth says that he walked on the plank from its east end and that the open spaces between the plank and the wall of the vat were visible to him from where he stood. In any event, in view of a new trial of the case, and under the circumstances, we will not under the facts of the present record decide whether there is sufficient testimony to allow the case to go to the jury.

For the error of the court in giving instruction numbered 5, as indicated in the opinion, the judgment must be reversed and the cause will be remanded for a new trial.