EDGAR LUMBER COMPANY *v.* DENTON.

## Opinion delivered November 27, 1922.

1. MASTER AND SERVANT—QUESTION FOR JURY.—Where plaintiff, a laborer engaged in flooring a tramway for defendant, was injured by stepping on a short board which a fellow servant had laid on the tramway without fastening it, refusal to direct a verdict for defendant on the ground of assumed risk was not error if the jury might have found that the dangerous situation created by the fellow servant was not so obvious that plaintiff should, in the exercise of ordinary care, have discovered it.

2. MASTER AND SERVANT—INSTRUCTION IGNORING DEFENSE OF ASSUMED RISK.—In an action against a lumber company for injuries caused by a fellow servant negligently placing a short board on a tramway without fastening it, an instruction that defendant was liable for injuries to plaintiff caused by a dangerous situation created by the negligence or wilful act of a fellow servant, provided defendant had control of the situation or an opportunity to control the negligent servant, was erroneous as ignoring the defense of assumed risk.

3. MASTER AND SERVANT—INSTRUCTION ASSUMING FACTS IN ISSUE.—In an action against a lumber company for injuries of an employee caused by the negligence of a fellow servant, an instruction that plaintiff does not assume the risks of dangers that arise from the negligence of defendant, and that defendant is responsible to plaintiff, who, while exercising due care for his own safety, is injured by the negligent act of a fellow servant, and plaintiff had the right to presume that his fellow servant would exercise due care, and did not assume the risk caused by the negligence of the fellow servant, was erroneous as assuming facts in issue, and excluding the defense of assumed risk of obvious danger.

4. MASTER AND SERVANT—ASSUMED RISK—INSTRUCTION.—In an action against a lumber company for injuries caused by a fellow servant's negligence, an instruction that there is no assumed risk as to the negligence of the fellow servant unless plaintiff realized the danger, and then exposed himself to it, was erroneous; the correct rule being that plaintiff assumed the risk of such dangers as were so obvious that he could and should have discovered same in the exercise of ordinary care.

Appeal from Union Circuit Court; *C. W. Smith,* Judge; reversed.

*T. D. Wynne* and *J. K. Mahony,* for appellant.

The court erred in not directing a verdict for the defendant. A servant assumes all the ordinary risks and dangers of his employment. *Francis* v. *Arkadelphia Milling Co.*, 153 Ark. 236. A master is not bound to warn and instruct his servant as to dangers which are patent and obvious. 107 Ark. 528; 82 Ark. 534; 58 Ark. 217; 97 Ark. 486; 90 Ark. 387; 89 Ark. 50; 77 Ark. 367; 65 Ark. 98. Where the duty devolves upon the servant to make his working place safe, the master is not liable. 98 Ark. 145; 76 Ark. 69; 89 Ark. 50; 97 Ark. 486; 88 Ark. 292. It is error to give conflicting instructions. 83 Ark. 202; 110 Ark. 198. Instruction No. 4 was abstract and misleading. 96 Ark. 614. It was a question for the jury. 87 Ark. 321; 103 Ark. 414; 104 Ark. 236; 113 Ark. 160; 14 Ark. 520; 24 Ark. 540; 33 Ark. 350; 89 Ark. 522; 14 Ark. 286; 93 Ark. 29; 14 R. C. L. 738. Instructions should not be based upon rejected testimony. 23 Ark. 101; 21 Ark. 271; 36 Ark. 641. The acts of a fellow servant must be measured by that of a reasonably prudent man under like circumstances. 103 Ark. 512.

*Jno. E. Harris* and *Pat McNalley,* for appellee.

There was no error in refusing to direct a verdict for the defendant. 93 Ark. 88. In directing a verdict for either party the rule is to take that view of the evidence that is most favorable to the party against whom the verdict was directed; and where there is any evidence tending to establish an issue in favor of the party against whom the verdict is directed, it is error to take the case from the jury. 91 Ark. 343; 120 Ark. 208; 103 Ark. 401; 101 Ark. 22; 96 Ark. 394. Instruction No. 3 requested by the plaintiff was a correct declaration of the law and should have been given. 105 Ark. 485; 152 Ark. 158. Instruction No. 4 was also correct and should have been given. 93 Ark. 88; 105 Ark. 485. Instruction No. 4½ should have been given, as it clearly covers the question of assumed risk. 93 Ark. 88; 105 Ark. 533. It is not the duty of trial courts in civil cases to give instructions upon any question unless the instructions covering the questions are tendered and requested to be

given. Randall's Instructions to Juries, vol. 1, sec. 466, p. 465; 78 Ark. 355; 93 Ark. 757. This court will not reverse for an instruction in bad form only, unless the trial court is given an opportunity to correct it. 109 Ark. 231; 113 Ark. 1. And the court refused to do so. 110 Ark. 117; 115 Ark. 555; 192 S. W. 174; 116 Ark. 179; 93 Ark. 209; 105 Ark. 575. The failure to reduce the instructions as to writing was not, under the facts in this case, error. 194 S. W. 34.

WOOD, J. This is an action by the appellee against the appellant to recover damages for personal injuries. The appellee, in his complaint, alleged that he was in the employ of the appellant as a laborer at its lumber plant at Wesson, Arkansas; that he and a colaborer were directed to erect a wooden tramway upon which to convey lumber; that the tramway was about four feet high from the ground; that the appellee and his co-laborer were engaged in laying a floor on trestle work; that the floor was being constructed out of lumber of various lengths, ranging from two to eight feet; that a few minutes before noon the appellee left his co-laborer and other workmen at work upon the tramway; that in his absence other employees had placed a short board on the tramway floor and had negligently failed to secure and nail said board; that upon his return he assumed that no short boards had been used during his absence, and, without any warning given him of the unfastened board, the appellee, in the course of his duty and work, stepped upon the end of one of the short unsecured boards, and it rose quickly, throwing him to the ground and severely injuring him.

The appellant, in its answer, specifically denied the allegations of the complaint and set up the defense of contributory negligence and assumed risk on the part of the appellee. It also alleged that the injury was due to an accident. The appellee testified that he had been in the employ of the appellant for about a year as a common laborer; that at the time the injury occurred he was working with one Glenn, another employee, in building

a new tram about four and a-half feet high. It was to be used for the purpose of conveying lumber from the mill to the yard. The dimensions of the flooring of the tram were 2 x 6 and 2 x 12. The tram was sixteen feet wide. They were using 30, 40 and 50-penny nails—good sized nails. Some of them had small heads and some between one-half and three quarters of an inch. When the appellee left for dinner, they had used the nails down to twelve or fifteen pounds, and he said he would bring some back so that they would not run out. Appellee left nails there in the buggy where they carried their tools and nails. The appellee was working under the directions of the straw-boss, one Griffin, and one Lacefield was foreman. They were instructed to build a flooring 16 feet wide, using lumber two inches thick and sixteen feet long when they started. They had used short pieces occasionally, a day or so when the appellant got hurt. The tram at that time was between 150 and 200 feet long. They were using the short boards at the direction of Griffin. The custom was to get off on the ground and line up one side of the tram, nail them, and saw the other end off. This was what the appellee was doing when he fell. The board that caused his injury was a 2x6" and between four and five feet long. Appellee had been working on the tram until about ten minutes before 12 o'clock, when he left Glenn, his co-worker, still working on the tram. Appellee returned in the afternoon at the usual time, and Glenn was not then working where the appellee left him. Appellee went back to work on the tram when Glenn was not present. Appellee described how his injury occurred as follows: "Beginning work on the tram, I got some nails, and I saw that the boards were over the line, so I lined them up. I got on the ground and lined up the boards, and this was what I was doing when I fell. Glenn was not present then. Griffin, Bass and John Meriwether were on the opposite side of the tram. They picked me up and set me on the edge of the tram, then carried me on a truck to the doctor's office, and then home." In his further testimony appellee described the nature of his in-

juries, which it is unnecessary, in the view we have of the record, to here set forth.

Will Glenn testified that he was working for the appellant the day the appellee was injured, and his testimony as to the nature of the work in which they were engaged was substantially the same as that of the appellee. Among other things he said: "The boards were placed on both sides of the place where Denton got hurt; after the boards were placed on the bench we would line it up by taking a line and line the boards on the front end and then push the boards in line; the long boards were not nailed, but we were nailing the splices all right; the decking boards were all long ones, but it lacked that much of being finished, so I spliced it; it (the board) was spliced on the third stringer; I cut it off and put it in there afterwards; it was about 4½ feet long. The boards on both sides of the short piece were long boards and not nailed; the weight of the board was more than the weight of a man, and there was no danger in not nailing the long boards. I did not regard it as necessary to nail the long boards, but we did the short ones."

The witness further testified that when appellee left for dinner the witness remained. They had been nailing the splices all right. Appellee took the nail-box, and stated he would bring more nails back with him. Witness did not see whether there were any nails. Witness placed the spliced board in the tram and had it ready to line up after dinner, and thought about the appellee saying he would bring the nails after dinner, and left himself for dinner without nailing the decking on either side of the spliced board. They were loose. Anyone could have seen that the piece of board was a short one—that it was not a long board, but was spliced. It looked to witness like any one could have seen by walking over it. Witness judged that the board was six feet long and was resting on two sleepers. There were nine stringers to the bench, and it was spliced on the third stringer.

The above testimony was undisputed by the testimony of witnesses for the appellant. The straw-boss

testified that they used full length lumber and some short length. "Usually we used full length lumber, but we were then using some short boards in building the tram."

The cause was sent to the jury, under instructions to which we will refer later. The verdict was in favor of the appellee. Judgment was entered in his favor, from which is this appeal.

1. The appellant asked the court to instruct the jury to return a verdict in its favor, and it urges the refusal of the court to so instruct the jury as its first ground for reversal.

Counsel for appellant contend that the undisputed evidence as above set forth shows that the appellee assumed the risk and that the court should have so declared as a matter of law, and cites the cases of *Francis* v. *Arkadelphia Milling Co.*, 153 Ark. 236; *Buena Vista Veneer Co.* v. *Broadbent,* 107 Ark. 528; *Chicago, R. I. & P. Ry. Co.* v. *Grubbs,* 97 Ark. 406; *St. Louis, I. M. & S. Ry.* v. *Going,* 90 Ark. 387. But these cases are readily differentiated from the case in hand by the facts. Each case must depend upon its own peculiar facts. Giving the evidence its strongest probative force in favor of the appellee, which is the rule in testing the refusal of the trial court to direct a verdict in favor of appellant, the jury might have concluded that Glenn, the fellow-servant, during the absence of appellee, contrary to the custom which prevailed at the mill plant, had laid short boards on the tramway and failed to nail the same; that by so doing a misleading condition had been created which the appellee had, no reason to anticipate existed, and therefore that appellee was not under any duty to exercise extra care to discover. By thus departing from the custom and laying these short boards without nailing the same, and thus creating a dangerous condition without any warning to appellee, the jury had the right to conclude that Glenn was negligent and that the appellee, by the exercise of ordinary care for his own protection in the performance of his work in the usual

way and according to the custom, would not have discovered the extra hazard which he faced, or at least was not bound to do so, and therefore that he did not assume the risk. The jury might have found that the dangerous situation thus created by Glenn was not such an obvious one that the appellee, on returning to his work, in the exercise of ordinary prudence for his own protection would or should have discovered. In *St. L. S. W. R. Co.* v. *Burdg,* 93 Ark. 88-92, we held that, under the statute (Acts 1907, p. 162), the negligent act of the fellow-servant is, as far as the rights of the injured servant are concerned, the same as if it was the negligent act of the master. Citing cases. And we further held as follows: "That by virtue of that act the master is made responsible to a servant who, while exercising due care for his own safety, is injured by the negligent act of a fellow-servant, the same as if the negligence was that of the master. The servant has therefore the right to presume that his fellow-servant will exercise due care and diligence; and he does not assume the risk of danger or peril caused by the negligence of the fellow-servant." That principle controls under the peculiar facts of this record. See also *Aluminum Co. of N. A.* v. *Ramsey,* 89 Ark. 522.

2. Learned counsel for appellant further contend that the issues joined were not sent to the jury under correct instructions, and in this contention we find that counsel are correct. At the instance of the appellee, the court, among other instructions, gave the following:

"No. 3. You are further instructed that defendant is liable to plaintiff for injuries to him due or caused by a dangerous condition created by the negligence or wilful act of a fellow-servant, provided the defendant has control of the situation or an opportunity to control the negligent servant.

"No. 4. You are further instructed that the plaintiff, F. E. Denton, in entering the employ of the defendant master, does not assume the risks of the dangers or perils that arise from or which are consequent upon the negli-

gence of the defendant, as he has a right to assume that defendant has exercised due care and diligence and to act upon the presumption that the defendant has and will exercise that care for his protection. The defendant here is made responsible to the plaintiff, who, while exercising due care for his own safety, is injured by the negligent act of a fellow-servant, the same as if the negligence of the master. The plaintiff had therefore the right to presume that his fellow-servant would exercise due care and diligence, and did not assume the risk or danger or peril caused by the negligence of the fellow-servant in placing said short board in the tramway without nailing same, and without giving notice to plaintiff of his act in placing same there without securely nailing same.

"No. 4½. You are further instructed that, under the evidence in this case, there is no assumed risk against the negligence of the fellow-servant unless he, plaintiff, realized the danger and then exposed himself to it."

Instruction No. 3 is erroneous for the reason that it entirely ignores the appellant's defense of assumption of risk, in telling the jury "that the defendant is liable to plaintiff for injuries to him due or caused by a dangerous condition created by the negligence or wilful act of a fellow-servant." The vice of this instruction was not cured by instruction No. 4 immediately following it, under the rule of juxtaposition, for instruction No. 4 itself is not a correct instruction on the doctrine of assumed risk.

It was contended by the appellant, and it had the right to so contend under the facts, that, even if Glenn were negligent in creating an extra hazard to the appellee during his absence by laying short boards without nailing the same, still the danger was an obvious one, and that, if the appellee had exercised the ordinary care exacted of him for his own protection in doing his work, he would have discovered the danger, at least should have done so. The instructions, neither separately nor taken together, properly present this phase of the case to the jury. These instructions furthermore are not cor-

rectly drawn, because they assumed the existence of facts which under the evidence were issuable. They declared to the jury as a matter of law "that the defendant here is made responsible to the servant, the plaintiff here, who, while exercising due care for his own safety, is injured by the negligent act of a fellow-servant." There is no hypothetical statement in either of the instructions by which the jury are left to determine whether or not the master, through its servant, was guilty of negligence, and whether the appellee had exercised ordinary care to discover the dangerous situation which confronted him, or whether the danger was such an obvious one that he could and should have discovered the same in the exercise of such care. See *Floyd* v. *Rix,* 14 Ark. 286; *St. L. I. M. & S. R. C.* v. *Rhoden,* 93 Ark. 29.

Appellee's instruction No. 4½ was not a correct declaration of law on the subject of assumed risk, and should not have been given.

These erroneous instructions, given at the instance of the appellee, were not cured by instruction number three on the same subject given at the instance of appellant. The charge of the court as a whole must be harmonious. *McCrary* v. *Hawkins,* 83 Ark. 202; *Turquett* v. *McMurrain,* 110 Ark. 197. The above are the reversible errors presented by this record, and because of these, the judgment is reversed and the cause remanded for new trial.