LOWDEN et al., Trustees, v. BOWEN.

No. 32116.   June 17, 1947.

Rehearing Denied Sept. 23, 1947.

*183 P. 2d 980.*

W. R. Bleakmore and James E. Grigsby, both of Oklahoma City for plaintiffs in error.

A. L. Morrison, of El Reno, and Bob Perdue, of Wilburton, for defendant in error.

OSBORN, J.   This action was brought by plaintiff, Carvin T. Bowen, against defendants Frank O. Lowden and Joseph B. Fleming, Trustees of the Chicago, Rock Island & Pacific Railway Company, under the provisions of the Federal Employers' Liability Act, to recover damages for personal injuries sustained by plaintiff while employed as a section hand by defendants. At the close of all the evidence defendants moved for a directed verdict, which motion was denied, and the cause submitted to a jury. Verdict and judgment was for plaintiff.   Defendants appeal.

The facts are undisputed.   From the evidence it appears the plaintiff was employed by defendants in the latter part of 1942 as a section laborer.   He was transferred from Wilburton, where he was first employed, to Arkansas in February of 1943, and worked with a gang there until May 15, 1943, at which time he sustained an injury to his left foot.   After he commenced working for defendants he had considerable foot trouble.   On April 9, 1943, he went from Arkansas to Oklahoma City to have his foot treated, and remained in the hospital there until April 19th, when he returned to Wilburton, and remained off work until May 1st, at which time he went back to work in Arkansas. On May 15th, while working on defendants' track, he was pushing a push car upon which was loaded a 55-gallon drum of

creosote and some hand tools used by the gang with which he was working. While pushing this car up the railroad track, which at that point was slightly upgrade and on about a three per cent curve, his left foot slipped on a tie and went into a slight hole or depression in the roadbed, spraining his instep. That evening he complained of the injury to his foreman, who took him to a physician. Thereafter he did no further work, and his physician testified that, in his judgment, the injury was such that plaintiff would be permanently incapacitated from performing manual labor. At the time of the injury plaintiff was 40 years of age.

Defendants contend (1) that there is no proof of primary negligence on the part of the defendants; (2) that the injury sustained by plaintiff was not proximately caused by any negligence of the defendants; and (3) that the evidence is insufficient as a matter of law to support a verdict under the Federal Employers' Liability Act.

Plaintiff contends that the evidence sufficiently establishes negligence, and that such negligence was the proximate cause of the injury.

Since we have reached the conclusion that no negligence on the part of defendants is shown, it will be necessary to discuss only the sufficiency or insufficiency of the evidence to establish such negligence.

Plaintiff contended in the trial court, and here contends, that defendants were negligent in two respects: First, in requiring plaintiff to operate a defective push car, and, second, in failing to provide him with sufficient assistance or additional help to push the car with the load it carried up the particular stretch of track upon which he was pushing it when injured.

From the evidence it appears that the push car was a flat car weighing 600 pounds, with four wheels, two of which were solid on the axles and would not turn independently of the axle, and two of which were loose on the axles and would turn independently of the axle. It was equipped with bearings or bushings on the loose wheels which were considerably worn. This condition, according to the testimony, did not impair the usefulness of the push car, but only made it harder to push. Plaintiff testified that at the time he was injured the weight of the push car with the hand tools and drum of creosote with which it was loaded was some 1,500 pounds. The foreman of the gang testified that, in his judgment, it would weigh anywhere from 1,500 to 1,700 pounds. From the evidence it appears that this push car and another push car, which plaintiff testified was easy to handle, were both being used by the gang and had been so used for some time, although plaintiff testified that the men whenever possible used the other car. At the time of the accident plaintiff was pushing the car behind the gang, picking up and loading on the car hand tools which had been left behind by the gang as it proceeded up the track in the performance of its work.

Plaintiff testified that shortly before the accident the foreman had furnished him with a fuser or flare and told him to keep a lookout for approaching trains; that while pushing the car up the grade with all his strength he turned and looked back to see if a train was visible, and that when he did so his foot slipped on a tie and went into a hole in the roadbed, which accident produced the injury complained of. He testified further that after the accident he continued to push the car and gather the tools from about 4 o'clock, when the accident occurred, until about 5 o'clock, when his work was completed. He further testified that this was the first time he had ever pushed this particular car, although he had pushed the other one at various times, and, that at times he had heard the men talk about the worn bushings or bearings in this particular car. He testified that he did not ask for any help to push the car on this particular occasion,

for the reason that he had previously asked for help and the foreman had refused to give him any. He did not specify any of the conditions under which he had previously asked for help, or whether, on those occasions, the car had been more heavily loaded than it was when he was injured, or just why help was refused. Both he and other men employed on the gang testified that it was customary, when the push car was heavily loaded, to assign more than one man to push it. Some of the other men employed on the gang testified that the worn bearings in this particular push car made it harder to push than the other one, but that it was used by the gang, and that pushing the car, unless it was very heavily loaded, was considered a one-man job.

Under the Federal Employers' Liability Act, 45 U.S.C.A. 51, a common carrier is liable for the injury or death of an employee "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, boats, wharves, or other equipment." And "negligence", as used in the act, is the violation by the employer of his duty to use reasonable care in furnishing his employees with a safe place to work, and safe tools and appliances with which to work. Bailey v. Central Vermont R. Co., 319 U.S. 350, 87 L. Ed. 1444, 63 S. Ct. 1062.

In Seaboard A. L. R. Co. v. Horton, 233 U.S. 492, 58 L. Ed. 1062, 34 S. Ct. 635, L. R. A. 1915C p. 1, the court, referring to the liability of the employer under the act, said:

". . . It was the intention of Congress to base the action upon negligence only, and to exclude responsibility of the carrier to its employees for defects and insufficiencies not attributable to negligence. The common-law rule is that an employer is not a guarantor of the safety of the place of work or of the machinery and appliances of the work; the extent of its duty to its employees is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the tools and appliances of the work may be safe for the workmen."

In Brady v. Southern R. Co., 320 U.S. 476, 88 L. Ed. 239, 64 S. Ct. 232, the negligence alleged was that one of the rails in the railroad track opposite a derailer was worn on the top and sides so that in the opinion of experts it was defective. From the evidence it appeared that the worn condition of the rail was not the proximate cause of the injury. In commenting on the evidence the court stated that there was no evidence of the unsuitability of the rail for ordinary use, and held that the carrier was not obligated to foresee and guard against the misuse of the derailer even if it occurred frequently. The court said:

"Without this unexpected occurrence, the adequacy of the rail vis-a-vis a properly used derailer is unquestioned. It was entirely disconnected from the earlier act of the carrier in placing the weak rail in the track. The mere fact that with a sound rail the accident might not have happened is not enough. The carrier's negligence must be a link in an unbroken chain of reasonably foreseeable events."

And in Southern Ry. Co. v. Bell, 114 F. 2d 341, a case arising under the federal act, the court said:

". . . It is a sound rule that one is liable for only those consequences 'which in the light of attendant circumstances, could reasonably have been anticipated by a prudent man, but not for casualties which, though possible, were wholly improbable'. Wyatt v. C. & P. Telephone Co., 158 Va. 470, 163 S. E. 370, 82 A.L.R. 386; St. Mary's Hospital v. Scanlon, 8 Cir., 71 F. 2d 739; Fort Smith Gas Co. v. Cloud, 8 Cir., 75 F. 2d 413, 97 A.L.R. 833."

In the instant case the only effect caused by the use of the worn bearings was to render the car harder to push. The evidence does not show how much harder it was to push the car in question

that it was to push a similar car in which the bearings were new and in perfect condition. But the evidence does show that the condition of the car was such that it was reasonably fit for ordinary use, and that it had been so used for some time prior to plaintiff's injury. Certainly defendants had no reason to anticipate that because of this condition the use of the car would result in an injury to an employee pushing it. They were not derelict and negligent in failing to foresee and provide against such possible injury.

Obviously, from the testimony of the plaintiff himself his injury was due to the fact that he was looking back at the time he took a forward step and did not watch where he was placing his foot, or was caused by his attempt to push the car with such a heavy load that it was beyond his strength to manage it alone. From the evidence it is apparent that had plaintiff been using the other push car, which he said was in good condition, the accident might have resulted although the car was not defective.

In neither of the contingencies above set forth could the accident to plaintiff be attributed to negligence on the part of defendants. There is here no showing that the push car was not a safe appliance, or that the injury to plaintiff was due to its defective condition. The duty of defendants under the federal act did not demand that they furnish the latest, best, and safest appliances. Chicago & N. W. R. Co. v. Bower, 241 U. S. 470, 60 L. Ed. 1107, 36 S. Ct. 624; Washington & Georgetown R. Co. v. McDade, 135 U. S. 554, 34 L. Ed. 235.

As said in Palmer v. Wichita Falls & N. W. Ry. Co., 60 Okla. 205, 159 P. 1115, a case arising under the federal act;

"An employer has discretion concerning the tools and appliances which he will furnish his employees, providing the tools and appliances so furnished are sound and perform the work which they are designed to do; mere proof that he is using tools and appliances of a certain kind, if an accident happens in the use of them, does not tend to show negligence unless it is coupled with some evidence — not mere speculation — that they were not properly performing their function."

The only case cited by plaintiff which is in any respect similar to the instant case is Blair v. Baltimore & O. R. Co., 323 U. S. 600, 89 L. Ed. 490, 65 S. Ct. 545. But the factual situation disclosed in the opinion in that case is radically different from the situation involved here. In that case the plaintiff and two other men were required to load 10-inch seamless steel tubes approximately 30 feet long and weighing slightly more than 1,000 pounds each upon a small truck of the kind commonly used in railroad stations to move freight and luggage. The pipes were greasy and slick and petitioner informed his superior that they were too heavy for him to move with the assistance he had. He was instructed by his superior to proceed to unload the pipes or the railroad would get somebody else that could. In the instant case plaintiff admitted that he did not advise his superior that the car was too heavy for him to push, or request assistance in pushing it, although he and other witnesses testified that when the cars were too heavily loaded for one man to push, others were sent to their assistance. Cases more nearly resembling the instant case, and in each of which recovery was denied for the reason that no negligence was shown, are Roe v. St. Louis Southwestern Ry. Co., 205 Ark. 416, 168 S. W. 2d 1112; St. Louis I. M. & S. R. Co. v. Goins, 90 Ark. 387, 119 S. W. 277; and Markarites v. Chicago M. & St. P. Ry Co., 59 Mont. 493, 197 P. 743.

What we have said above largely disposes of plaintiff's contention that defendants were negligent in failing to provide him with sufficient assistance or additional help. The evidence does not show that the foreman in charge of the gang knew or had any reason to believe that the plaintiff had placed such a load

184

upon the car that it was necessary that another man be furnished to assist him. The evidence of the plaintiff and others was that the pushing of the car was considered a one-man job, but that when it was too heavily loaded for one man others were sent to his assistance. The fact that plaintiff had theretofore requested assistance in pushing the other car, and that such assistance had been denied under circumstances and for reasons not shown by the evidence, does not excuse his failure to ask for help on this particular occasion, if he in fact was unable to push the car alone. The exercise of reasonable care did not require the foreman to anticipate that plaintiff might injure himself by loading the car too heavily and then attempting to push it by himself.

The motion for directed verdict should have been sustained. Reversed, with directions to dismiss the action.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, CORN, and GIBSON, JJ., concur. ARNOLD, J., concurs in reversal, but dissents as to directions to dismiss.