FREBES *v.* MICHIGAN CENTRAL RAILROAD CO.

MASTER AND SERVANT — RAILROADS — NEGLIGENCE — EVIDENCE—DIRECTED VERDICT.

In an action by a "car rider" on a switch engine for personal injuries caused by the derailment of the engine by a coupling knuckle in a frog in the track, a verdict was properly directed in favor of defendant in the absence of evidence of any actionable negligence on the part of defendant or its employees.

Error to Wayne; Perkins (Willis B.), J., presiding.

On constitutionality, application and effect of Federal employers' liability act, see notes in 47 L. R. A. (N. S.) 38; 48 L. R. A. (N. S.) 987; L. R. A. 1915C, 47.

Submitted April 25, 1922.    (Docket No. 137.)    Decided June 5, 1922.

Case by George P. Frebes against the Michigan Central Railroad Company for personal injuries.    Judgment for defendant on a directed verdict.    Plaintiff brings error.    Affirmed.

*Walter M. Nelson* (*John D. Lynch*, of counsel), for appellant.

*J. Walter Dohany* (*F. E. Robson*, of counsel), for appellee.

MOORE, J.    This is an action brought by George P. Frebes, under the Federal employers' liability act (35 U. S. Stat. chap. 149, p. 65), to recover for personal injuries sustained by him on October 23, 1917, while in the employ of the Michigan Central Railroad Company as a car rider in its junction yards at Detroit, Michigan.    The defendant has the junction switching yards, where incoming freight trains are broken up and outgoing freight trains are made up.    On each car as it is so switched rides a switchman who is called a car rider.    His duty is to stop the car at the proper place, and open the coupler so that the next car will couple to it without difficulty.    The plaintiff was working as a car rider at the time he was injured. In the yard is a switch engine commonly referred to as a trimmer which moves the cars.    It is equipped with foot boards extending across the entire width of the engine both in front and rear a few inches above the ground.    These foot boards are for the switchmen and car riders to ride upon.    In the course of his duties Mr. Frebes stepped upon the front running board and stood upon the right or engineer's side of the board.    He turned around to take the number of the engine which was on a plate on the front of the boiler.    At that moment the engine was derailed and

Mr. Frebes received serious injuries.   The engine was derailed by a knuckle which was at a frog on a switch track leading off the main track.   A knuckle is a part of a coupling on a car.   It is made of cast iron or steel.   When all the testimony had been given the trial judge was of the opinion that no actionable negligence had been shown and directed a verdict in favor of the defendant.   The case is brought here by writ of error.

Two propositions are argued in appellant's brief:

(1) Was defendant engaged in interstate commerce at the time plaintiff received his injuries?

(2) Was there any evidence of negligence on the part of the defendant?

We recognize the well-established principle that the plaintiff is entitled to have his evidence given the most favorable construction it will bear and to have the benefit of every fair inference that may be drawn from the evidence guided by sound processes of reasoning and applicable principles of law.   See *Benjamin* v. *McGraw*, 208 Mich. 75; *In re Bailey's Estate*, 213 Mich. 344; *Douglas* v. *Insurance Co.*, 215 Mich. 529, 533; *Wood* v. *Vroman*, 215 Mich. 449.

In our view of the case the pivotal question is, Did the plaintiff show actionable negligence on the part of the defendant?   It is insisted that, if the engineer had been looking, he would have discovered the obstruction in time to have stopped his engine, and that, taking all the facts and circumstances surrounding the occurrence, it presented a case for a jury.   We quote from the brief:

"The happening of the accident taken in connection with the surrounding circumstances raises a presumption of defendant's negligence which constitutes a *prima facie* case for the jury.   *Burghardt* v. *Railway,* 206 Mich. 545; *O'Donnell* v. *Lange*, 162 Mich. 654; *Sewell* v. *Railway*, 158 Mich. 407; *Chapman* v. *Express Co.*, 192 Mich. 654."

When the accident happened it was a rainy day and the scope of vision was limited. It may be well to now quote some of the testimony of the plaintiff:

"While we were going down to get the rest of the riders and after we ran in on this short lead, the engine got derailed. I do not think all the wheels were off the rails, but most of them were. The engine was not off the ties. The moment it struck, Mr. Montgomery hollered at me. I was taking down the number of the engine, had just glanced up there. He hollered. The engine struck something and threw it right end up and threw me off right under the engine. The engine struck just about the same time he hollered. I did not have time after hearing his voice to jump off his engine, for it all happened in a fraction, in a very short time at least.

"Montgomery jumped just as he hollered, but it did not in any way cause my injury, for his jump did not and could not throw me off. He jumped off the left side, and when the engine was derailed that threw me off, the engine jumped to the south of the rails, and the wheels were right down on the ties. Whatever it was threw the front end of the engine up and that is what threw me off. I was thrown off right between the rails of the track on which this engine was traveling, right in front of the engine. I did not see any obstruction to the engine passing along in its usual manner. I did not see anything. I do not, of my own knowledge, know what derailed the engine. Standing on the foot board as I was, I was practically over the rail. The engine did jump the track, and its jumping threw me off. * * *

"A. No, that is the first engine I have seen derailed since I have been working for the company."

We quote from his recross-examination:

"I never saw a knuckle out there on the tracks, and in the two months I worked there the yards were always kept clean and everything picked up. Inspectors and track men went over the yards continually picking up everything all the time, and kept it all clean. They went back and forth all over the tracks and there were a number of men in that yard doing that kind of work, and I knew they were there for that purpose.

"*Q.* And you, from your experience there, saw that track, the lead track and the other tracks you worked on were kept clean?

"*A.* Yes.

"*Q.* All the time you were there?

"*A.* Yes.

"*Q.* No obstructions?

"*A.* No.

"*Q.* No knuckle?

"*A.* No.

"*Q.* Coal that fell off a car being moved would be immediately picked up?

"*A.* Yes.

"*Q.* And so, for a knuckle to be on either one of these tracks from the experience you had there, and seeing the tracks were kept so clean would be a most unusual occurrence?

"*A.* That is the first I have seen.

"*The Court:* Well, did you see that one?

"*A.* Well, no, I didn't see it.   *   *   *

"*Q.* Now, looking at the number was a matter of only a moment, wasn't it?

"*A.* Yes, sir.

"*Q.* So you had your eyes away from the front direction in which you were going but a very short time?

"*A.* Yes.

"*Q.* A matter of two or three seconds?   .

"*A.* Just a short time; yes, sir.

"*Q.* And prior to the looking at the number, you said you had your eyes in the direction in which you were going and looking forward on the track?

"*A.* Yes.

"*Q.* And you saw nothing?

"*A.* No.

"*Q.* And you momentarily glanced around at this number, which took two or three seconds, and the accident happened?

"*A.* Yes, sir."

Witness Montgomery, who was riding on the front foot board with plaintiff, testified in substance that he

"saw something on the track when he was about 50

feet from it, the engine at the time moving 6, 7 or 8 miles an hour, but did not know what it was and waited until he got within two feet of it when he saw it was a knuckle and hollered to Frebes to jump. The knuckle was lying alongside the track in the frog. When witness first saw the object he could not tell what it was because of the peculiar position it was lying in on its back flat in the heel of the frog and could not discern it until he got close and as soon as he got close enough to see what it was he jumped. He could not tell what it was until the knuckle was about 2 feet from the foot board. He jumped just as soon as he saw what it was. Being in the frog it was lying right between the two railroad rails where they branch out from each other. The day was drizzly, rainy, cold, damp, cloudy and overcast. He had been working in the yard prior thereto and had not seen this knuckle in his traveling down the yard. He was back and forth over the same tracks around 20 times in the forenoon and saw no knuckles there. He saw another yard engine making up trains, working back and forth over the same lead track with and without cars, making moves all the forenoon."

We have gone over this somewhat lengthy record with great care. We do not find in it any evidence of negligence on the part of the defendant. We agree with the trial judge when he said:

"The engine was derailed and I assume that it was derailed because this knuckle was in this frog; it has not been shown that a single person in the employ of the defendant railroad company knew that that knuckle was there until a few seconds before the injury. Nothing has been shown by which the jury could infer, in my judgment, that by reasonable inspection the knuckle could have been observed in time to have averted the accident to the plaintiff. There is nothing in the case, as I have already said that indicates that the defendant was not performing its full duty with reference to inspection, and we all know the fundamental rules with respect to the duty of an employer to inspect. It is fundamental that there must be either actual or constructive notice of the danger and a reasonable opportunity given to the em-

ployer to remove it before he can be charged with actionable negligence.

"I do not believe, gentlemen, that this case can go to the jury on the subject of the alleged negligence of the defendant because in some way or other this knuckle got into this frog on this particular occasion.

"The only other question is as to whether the engineer by the exercise of reasonable care should have seen this knuckle in time to have averted the injury.

"The plaintiff's own testimony convinces me that that could not have been done. It is not a question of fact to be submitted to the jury as to whether he could or could not have seen it; it would be pure conjecture. The plaintiff's own witness testified that he was watching it in the mist and rain of that morning; he could not observe until he reached within three or four feet of it and then he discovered what it was, gave the warning and leaped to safety himself.

"Now it would be presumptuous in the face of the plaintiff's own testimony to submit a question of inference to this jury whereby they might decide contrary-wise and that the engineer could have seen over his engine and 50 feet ahead of his engine, and still determine that that was a knuckle and stop his engine in time to have avoided the injury. I do not believe that is a question for the jury, but rather under the undisputed facts it drifts into the realm of mere conjecture and does not come within the field of legitimate inference from the testimony."

See *Toomey* v. *Steel Works,* 89 Mich. 249; *Culver* v. *Railroad Co.,* 138 Mich. 443; *Micari* v. *Monroe Stone Co.,* 154 Mich. 362; *Beach* v. *Railroad Co.,* 180 Mich. 524; *Meyer* v. *Grand Rapids Chair Co.,* 180 Mich. 604.

Having reached this conclusion, it is unnecessary to discuss the other question.

Judgment is affirmed, with costs to the appellee.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.