STIBBARD *v.* STIBBARD.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE—SUFFICIENCY.

Where, on appeal from a decree dismissing the bill in a husband's suit for divorce on the ground of extreme cruelty, the evidence is convincing that he has sustained the allegations of his bill. a decree in his favor will be entered in this court.

2. SAME—ALIMONY—ALLOWANCE TO WIFE IN LIEU OF DOWER.

Where it appears that the property standing in the wife's name is more than double that of the husband, but one dollar will be allowed her in lieu of her dower rights in his property.

3. SAME—REMAND FOR FURTHER PROOF DENIED IN ABSENCE OF SHOWING JUSTIFYING SAME.

Defendant's request that the record be remanded for the taking of further proof as to the relations of the parties since the hearing was had in the court below is denied where no such showing is made as would justify such action.

Appeal from Wayne; Hart (Burton L.), J., presiding. Submitted June 20, 1923. (Docket No. 128.) Decided July 19, 1923.

Bill by Albert A. Stibbard against Elizabeth G. Stibbard for a divorce. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Lodge & Brown,* for plaintiff.

*Stevenson, Carpenter, Butzel & Backus* (*Charles A. Wagner,* of counsel), for defendant.

SHARPE, J.    Plaintiff and defendant were married in November, 1901.    They have no children.    He is

On extreme cruelty as grounds for divorce, see notes in 18 L. R. A. (N. S.) 305; 34 L. R. A. (N. S.) 360.

47 years old and she several years older.   They have lived in Detroit for many years, during a part of which time they conducted a wholesale and retail corset business in her name.   He now seeks a divorce for extreme cruelty.   Their marital difficulties began as early as 1903 and culminated in a final separation in 1918.   A careful reading of the record satisfies us that many of the charges of cruelty testified to by him are fully sustained by a great preponderance of the evidence.   On several occasions she assaulted him, causing him severe pain and suffering.   On one of these a physician was called to relieve him.   A witness who worked for them in the store and a customer who was present testified to acts of personal violence. She several times threatened to shoot plaintiff.   She made no specific denial of many of these charges and offered no reasonable excuse for the acts of cruelty admitted by her.   It is apparent that she has a violent and ungovernable temper.   He testified that on the day he left their home, while they were discussing a proposed sale of some of his property, she swore at him and—

"started poking at me, and punching me; scratched my nose and made a big pick across my nose, kicked me on the shins, and all the time used the most violent language I could think of."

She followed him up the stairs to his room, locked the door of the closet so that he could not gain access to his trunk and went down the stairs.   He followed her and tried to persuade her to give him the key and she—

"ordered me out, she told me she would never be happy until she saw my back going out of the door for the last time, and   *   *   *   all the time she was in a terrible rage and would not give me the key, and we got then to the dining room and she ran at me in a rage again, and I had to take her by the wrist and

hold her this way (indicating) and I held her hand back so she would not punch at me any more.   My eye had begun to swell up even that quickly, and she ran quickly and pulled the kitchen table drawer open and grabbed the butcher knife and said 'I will kill you,' and quickly dropped the knife back."

He retreated to his room and locked the door and after she left the house he did so also and they have not lived together since that time.   As to this incident she testified:

"On this day he was standing, nagging me, he would not take breakfast with me, never knew where he was, so he came in this day and began nagging me as usual.   I said, 'Albert, I cannot stand this any more.'   He said, 'All right.'   He started upstairs and I went upstairs and I locked the door so he could not get the key.   I locked it so he could not get his trunk out of the closet and he grabbed my arm and twisted it so he would break it.   I said, 'Albert, don't break my arm, as I have got boarders to make a living, and if you break my arm, I won't be able to do my work and he still twisted it, and in order to get loose, I hit him hard, in order that he would not break my arm, this was in self defense."

She afterwards made complaint in the recorder's court, charging him with non-support.   The bill of complaint herein was then filed and the proceeding discontinued.   At that time she had property of the value of at least $50,000, and he of less than one-half of that amount.

Defendant's real grievance seems to have been that plaintiff neglected her, did not accompany her to places of amusement and unreasonably absented himself from the home.   The trial court found that "there is no proof of any immoral conduct on his part."   It is urged that defendant's conduct should be excused on account of her physical condition, due to the change in life and the consequences incident thereto to which

females are subject.    Were the charges of cruelty limited to this period, we would be much impressed with this argument.    But their marital difficulties, for which we can not but find she was most to blame, began soon after their marriage and continued until they finally separated.    Consideration of the entire record convinces us that the plaintiff has sufficiently sustained the allegations in his bill to entitle him to a decree of divorce.    Such a decree may be here entered.

In the bill of complaint plaintiff prayed for an accounting, but this claim is not pressed in this court. As it is apparent that the value of the property to which she has title is more than double that possessed by him, but one dollar will be awarded her in lieu of her dower in the property of the plaintiff.    No costs will be allowed.

We have not overlooked defendant's request that the record be remanded for further proof as to the relations of the parties since the hearing was had in the court below.    No such showing is made as would justify such action.    *Jacob* v. *Cummings*, 213 Mich.. 373.

WIEST, C. J., and FELLOWS, McDONALD, BIRD, MOORE, and STEERE, JJ., concurred.    CLARK, J., did not sit.