No. 13,414.

TUKE *v*. MOUNTAIN STATES PACKING COMPANY.

(46 P. [2d] 895)

Decided May 13, 1935. Rehearing denied June 3, 1935.

Mr. A. D. QUAINTANCE, Mr. E. B. EVANS, for plaintiff in error.

Mr. MAX D. MELVILLE, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THE parties here involved are aligned as in the trial court and reference will be made to them as plaintiff, the packing company, and the finance company.

Plaintiff, on February 19, 1931, sued to recover $500, which, he alleges, he paid to the packing company for five shares of common and five shares of its preferred stock in February, 1925. He further alleges that the packing company failed and refused to deliver the stock to him; that in September, 1925, it agreed to give him its notes or interest bearing certificates of indebtedness in lieu of the stock; that after many requests it neglected and refused to deliver to him the notes or certificates of indebtedness or to return his money.

In the answer to the complaint, it is alleged that in a former complaint—which upon trial was dismissed by plaintiff after a motion for dismissal was made by defendant on plaintiff's opening statement to the jury—plaintiff alleged the purchase of the stock to have been made on February 12, 1925, and the cause of action herein sought to be alleged, is barred by the six year statute of limitations. There is a denial of the material allegations of the complaint. Replication was filed and upon trial motion for nonsuit was granted at the close of plaintiff's case, and complaint dismissed. To this judgment of dismissal, error is assigned.

The question presented is, did the plaintiff make his deal with the packing company, or its agent, or did he deal with the finance company; and, further, was the finance company an agent of the packing company? The trial court found that plaintiff had failed to show a deal with the packing company or that he had made a deal with such an agent of the packing company as would bind it. In this finding we believe the trial court was right, and it therefore properly sustained the motion for nonsuit.

Plaintiff had previously purchased about $3,000 worth of packing company stock through the finance company and its agents, Borror and Dietrich, and on February 12, 1925, paid $500 to said agents of the finance company on the following subscription, which is Exhibit A.

"A. No. 8353 Stocks and Bonds

"United States Finance Corporation.

"Suite 1025 Foster Building, Denver, Colorado.

"Incorporated under the laws of the District of Columbia by virtue of an Act of Congress.

"I hereby subscribe and agree to pay for 5 Pref & 5 shares Common Stock shares stock of Mountain States Packing Co at $100.00 per share; fully paid and non-assessable. Payment for said stock in amount of $500.00 is herewith made.

"No verbal statement concerning the securities offered by this Corporation not contained in the printed literature concerning the offering, or authorized in writing by the Executive Officers of the United States Finance Corporation shall be considered as influencing this subscription or binding on the broker offering same.

"Witness my hand this the 12 day of February, 1925,

"Borror & Dietrich "Geo. F. Tuke

"Representative. "Eskdale Colo.

"The United States Finance Corporation reserves the right, for a period of five days after receipt of this application at its Home Office, to cancel this contract and refund all money paid hereon.

"Make all checks and drafts payable to United States Finance Corporation."

This exhibit shows that plaintiff was purchasing this stock direct from the finance company, and not from the packing company. The finance company had handled stock other than packing company stock and plaintiff had traded for some. Not the slightest connection between packing company and finance company is traceable in this subscription.

Plaintiff contends that Exhibit C shows that the finance company was really the agent of the packing company to sell its stock. The exhibit is too lengthy to set out in full, but it distinctly shows on its face that it is a contract between the packing company and the finance company, giving the finance company the exclusive right, for a limited time, to purchase at a fixed price stock from the packing company, and that same would be issued only when paid for by the finance company either in cash or government bonds. It further shows that all subscriptions for purchase of stock, so bought and owned by the finance company, were to be taken in the name of the company; that the money received by the packing company from the finance company on stock purchases was to be used for the construction and operation of its new packing plant.

This contract, instead of creating an agency, carefully guards against the creation of one. Plaintiff has sued the packing company and fails, by even the slightest of evidence, to show that he had any contract or dealings with it, and unless an agency is created by Exhibit C, which we definitely determine was not so created, then plaintiff's first claim against the packing company for failure to deliver the stock so purchased, under Exhibit A, or for a return of the money, must fall, because plaintiff admits he made the deal with the finance company, and if the finance company is not an agent of the packing company, then it follows as a logical conclusion that not the slightest liability on the part of the packing company

is shown. There is not a word in the record to the effect that the packing company ever received one cent of the alleged $500 payment. On the other hand, the evidence shows that Gamble, the president of the finance company, kept the $500 received from plaintiff and did not turn it over to the packing company or to anyone for it; that he kept it to balance expenses of a trip he had made for that company. So far as the transaction surrounding the purchase of this stock was concerned, plaintiff was unknown to the packing company, and it was under no obligation to him in any way. But if it was, any cause of action based on this transaction expired February 12, 1931, and the complaint was not filed until February 19, 1931.

Plaintiff sets out in his complaint the foregoing stock transaction apparently as a basis for the further contract allegedly made between himself and the packing company through an agent, and on which he now relies for recovery. This obligation, he claims, arises under his theory that the packing company received his money, and gave him no stock, but did agree to give him a new consideration for it. This latter transaction is alleged to have taken place in September, 1931. The trial court in passing on defendant's motion for a nonsuit said: ''We find that the only testimony we have as to what took place at that time is that Mr. Tuke, who was acquainted with Mr. Melville, and who might have been a stockholder of the Mountain States Company for a number of years, attended some of their meetings of stockholders, and knew Mr. Melville as an attorney for the company, the one to whom practically everything of serious import was referred, for his opinion from time to time, went to the office of Mr. Melville, and I had that testimony read this morning in order to refresh my memory and to verify the notes which I had as to what took place. And what did take place? Mr. Tuke says that after Dietrich and Borror had gone down to Fort Morgan and sought out his ranch and told him that Mr. Melville would like to talk to him the next time he came to Denver and he wished he

would see him, and he did. That was along in September. He said that he went up to Mr. Melville's office after going two or three other places, and further, 'I had talked with Mr. Melville in the afternoon in regard to this stock' —which he had subscribed for from the Finance Corporation, five hundred dollars worth—'and he told me that Gamble, the Finance Corporation, had plenty of credit due from the Mountain States Packing Company and I had better take a certificate of indebtedness in place of that stock, and I told him all right I would leave that to him, just as he thought best, and then he told me if I could go the next day to the mixed feed mill, that he wanted to consult me how to put up feed racks and such as that—that he was managing that,' and then he tells about how the next day he went out there with Mr. Dietrich. That is the only testimony as to any contract or any attempt to prove any contract between Mr. Tuke and the Mountain States Packing Company in regard to his claim that they, in September, agreed to give him some notes or certificates of indebtedness for the five hundred dollars which he had five or six months before paid to the Finance Corporation. Later on in his testimony * * * Mr. Tuke said, 'I agreed to accept certificates of indebtedness instead of stock.' That is all very fine, but there is not a scintilla of evidence anywhere that the Mountain States Packing Company, through Mr. Melville or through anybody else, ever agreed to give him the certificates of indebtedness. The most that you can possibly make out of this evidence is that Mr. Melville made a suggestion to him that he had better take a certificate of indebtedness in place of the stock. That was not any offer to give him a certificate of indebtedness in place of the stock; it was simply a suggestion that in the opinion of Mr. Melville, whatever his connection may be with the Packing Company, that was his advice to him as to what he had better do.''

 There is no evidence that Melville, if he had any authority to do so, ever agreed that the packing company

would give notes or certificates of indebtedness to plaintiff, and no showing whatever that he had any authority by which he could have bound the packing company. He was not an officer or director of the company. Any cause of action plaintiff ever had was confined to his dealings with the finance company, and never extended beyond its liability to him. It then follows that the evidence which would tend to establish that liability would not support a judgment against the packing company. Plaintiff insists that the packing company permitted the finance company to hold itself out as its agent in pursuance of its ostensible authority. This is refuted by Exhibit A, which shows that the finance company was the principal in the sale of stock owned by it, and that plaintiff understood he was buying stock from the finance company.

The motion for nonsuit was properly sustained and the judgment is therefore affirmed.

MR. JUSTICE YOUNG specially concurs.

MR. CHIEF JUSTICE BUTLER, MR. JUSTICE HILLIARD and MR. JUSTICE BOUCK dissent.

MR. JUSTICE YOUNG, specially concurring.

I concur in the conclusions of Mr. Justice Holland, but solely on the ground that the cause of action was barred by the six year statute of limitations, and that this fact is established by the plaintiff's testimony.

The plaintiff seeks to avoid the bar of the statute by a showing that the defendant company, acting through Mr. Melville, its agent, agreed to give plaintiff a certificate of indebtedness of the defendant company for the amount the plaintiff had paid for his stock. The conversation concerning this matter was very informal and in my opinion does not establish a definite offer to settle and compromise the claim, and an acceptance by the plaintiff. No such certificate was ever issued, and in my judgment all that the evidence discloses is that there were negotiations for such a settlement which were never completed.

In this view of the case, it is not necessary to determine whether Melville was in fact the agent of the defendant company and authorized to make such a compromise settlement.

Mr. Justice Burke concurs in the views expressed herein.