[Civ. No. 1738. Fourth Appellate District.—June 26, 1936.]

FRANK J. MATTHEWS, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

Clifton Hildebrand, Louis E. Goodman and Louis H. Brownstone for Appellant.

McFadzean & Crowe and W. H. Stammer for Respondent.

MARKS, J.—Plaintiff brought this action under the provisions of the Federal Employers' Liability Act (secs. 51 et

seq., Title, Railroads, 45 U. S. C. A.) to recover damages for injuries which he received when throwing a switch in the city of Lemoore, Kings County, on the evening of October 3, 1931. It is admitted that at that time both plaintiff and defendant were engaged in interstate commerce and that the cause of action is governed by the federal statutes.

Plaintiff was an experienced railroad man and had been in the employ of defendant since 1913. At the time of the accident he was employed as brakeman on train number 301 which ran from Lemoore to Fresno. On that day he was called for duty at about 5:30 P. M., ate his dinner, secured his working clothes and equipment from the caboose of the train, went over to the station for his switch list and returned to the engine.

The main tracks of the Southern Pacific Company run through Lemoore in a general easterly and westerly direction with two sidings, one on each side of the main line and parallel to it. The freight train in question was on the north siding facing east. To pass onto the main track it was necessary for the train to back through a star switch. This switch was located in the block bounded on the north by F Street, on the south by E Street, and on the east by Fox Street, which crossed the tracks about 150 feet east of the switch. The block has a north and south dimension of about 250 feet. On the portion of the block north of the tracks are situated places of business of the Central Lumber Company and the Shell Oil Company. On the south portion are the places of business of the R. O. Deacon Lumber Company, the Tracy-Waldron Fruit Company, and quarters for section hands. The buildings of the companies are located close to the south rail of the south siding with the west end of the Tracy-Waldron Fruit Company building directly south of the switch in question. A photograph of the switch and tracks adjoining it shows evidence of a foot-path along the rails and by the switch.

A star switch is opened or closed by raising a handle on the switch standard from the perpendicular to the horizontal which releases a "dog" from a slot in the mechanism and by moving the handle until the "dog" falls into a second slot about four inches from the first. This causes one floating rail of the switch to travel to or away from one stationary rail and the other floating rail of the switch to make the

opposite movement away from or to the other stationary rail. When the switch is open trains can pass from the north siding to the main track, or *vice versa*. When it is closed they pass along the main track.

When plaintiff returned to the engine the train backed off the north siding onto the main track through the switch in question. The evidence does not show whether the switch had been opened at the time by another member of the train crew or whether it had remained open for a time prior to the movement of the train. When the train had passed through the switch onto the main track it became plaintiff's duty to close the switch. He thus described the happenings at that time: "When I got off this engine here, dropped off as we term it, I went over to this switch, took the lock out of the eye of this keeper, as we might term it, and in the usual manner I started to pull this handle, in other words, to close this switch so the movement could be made down the main line, but finding that it was difficult to do, to get it into this slot, I either shoved it back or pulled it back, in other words, I shoved the handle back so that I would get a firm hold on it to make a lunge at it, to get it down into this slot here, and with all my strength I took the handle of the switch and pulled it to me with all my strength, and like it went up against a stone wall, which caused me to go forward, and the result of it was pain struck me and my hands flew off the handle and I fell over on the handle which was protruding like that in a horizontal position, fell over on my abdomen against it after the pain had struck me. Q. Well, what kind of a pain did you experience there at that time? A. An agonizing pain. Q. Well, then what did you do after that? A. Well, I got myself together and after a moment there the pain had subsided so I went over to ascertain what was the cause of this condition, and looking down about three to five— Mr. Pryor: Condition of what: of yourself or the switch? A. The switch. Mr. Martin: All right. Go ahead. A. So, looking down I saw in about three to five feet of it, a nut, a large hexagon nut lying flat on the plate, and I immediately stooped down or at least held myself together with the pain that was there and I lifted this nut up and looked at it, which was very rusty and had a stud in it which was protruding on both ends to a certain extent. I walked back then to this switch from this point here and after examining

it, as I stated, I just leisurely tossed it over into some grass that was west of this switch here, so then I closed the switch, . . . ''

Plaintiff made no report of his injury to members of the train crew nor to anyone else for some time. He went on with his duties and threw from ten to fifteen switches in Armona, ten to fifteen in Hanford, about ten in Goshen, and from twenty to thirty in Kingsburg where he ate another meal. He threw one or two switches in Selma and was then forced to stop his work because of pain. He left the train at Fresno, went to his home and called a physician who administered to him. The next morning he was taken to a hospital in Fresno where he was operated on for appendicitis, volvulus, and the removal of a growth in his abdomen. About five feet of his bowels were removed. The twelve-inch incision in his abdomen did not heal and he was removed to the Southern Pacific Hospital in San Francisco for examination and treatment. He returned to Fresno during the latter part of November, but the wound reopened and he was returned to the Southern Pacific Hospital in San Francisco in March, 1932. While the wound seemed to have healed it left a fibrous tumor mass protruding from the abdomen. There is evidence supporting the conclusion that this condition could have been the result of the strain and blow received when plaintiff attempted to throw the switch in Lemoore.

In April, 1932, plaintiff and another returned to Lemoore and found the hexagonal nut which plaintiff had removed from the switch and had thrown into the grass. Plaintiff testified that it was a ''railroad nut'' used on the brake rigging of certain types of Southern Pacific freight cars. Other testimony is to the effect that it was similar to those so used but that such nuts were used in ''lots of places''.

At the close of plaintiff's case a motion for nonsuit was made and granted and this appeal from the judgment followed.

It is plaintiff's theory that defendant did not provide a safe place in which he could work and that there was negligence proven in that defendant permitted the nut to remain in the switch and that this was the proximate cause of his injury.

Section 51, U. S. C. A., gives a right of action to an employee against his employer when both are engaged in inter-

state commerce "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment". ▮ Under the Federal Employers' Liability Act the contributory negligence of the employee is not a complete defense to an action but serves to mitigate the amount of damages recoverable. Assumption of a risk of the employment is a defense. It must be specially plead and generally speaking the employee is not required to anticipate and negative this defense. (*Thomas* v. *Southern Pacific Co.,* 116 Cal. App. 126 [2 Pac. (2d) 544].)

▮ It is well established that the construction placed on the Federal Employers' Liability Act by the United States courts is controlling and must be followed by the state courts. (*Walker* v. *Iowa Cent. R. Co.,* 241 Fed. 395; *Hoogbruin* v. *Atchison, T. & S. F. Ry. Co.,* 213 Cal. 582 [2 Pac. (2d) 992].)

In construing the portion of the section of the act which we have quoted, the Supreme Court of the United States said in the case of *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492, 34 Sup. Ct. 635 [58 L. Ed. 1062, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1]: "This clause has two branches; the one covering the negligence of any of the officers, agents, or employees of the carrier, which has the effect of abolishing in this class of cases the common-law rule that exempted the employer from responsibility for the negligence of a fellow employee of the plaintiff; and the other relating to defects and insufficiencies in the cars, engines, appliances, etc. But, plainly, with respect to the latter as well as the former ground of liability, it was the intention of Congress to base the action upon negligence only, and to exclude responsibility of the carrier to its employees for defects and insufficiencies not attributable to negligence. The common-law rule is that an employer is not a guarantor of the safety of the place of work or of the machinery and appliances of the work; the extent of its duty to its employees is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the tools and appliances of the work may be safe for the workmen. (*Hough* v. *Texas & P. R. Co.,* 100 U. S. 213, 217 [25 L. Ed. 612, 615]; *Washington & G. R. Co.* v. *McDade,* 135 U. S. 554, 570, 10 Sup. Ct.

1044, 34 L. Ed. 235, 241] ; *Choctaw, O. & G. R. Co.* v. *Mc-Dade,* 191 U. S. 64, 67 [24 Sup. Ct. 24, 48 L. Ed. 96, 100, 15 Am. Neg. Rep. 230].) To hold that under the statute the railroad company is liable for the injury or death of an employee resulting from any defect or insufficiency in its cars, engines, appliances, etc., however caused, is to take from the act the words 'due to its negligence'. The plain effect of these words is to condition the liability upon negligence; and had there been doubt before as to the common-law rule, certainly the act now limits the responsibility of the company as indicated.'' (See, also, *New Orleans etc. Co.* v. *Harris,* 247 U. S. 367 [38 Sup. Ct. 535, 62 L. Ed. 1167].)

It follows from the rules announced in the foregoing cases, and many others that might be cited, that proof of negligence is a necessary integral part of plaintiff's case. While no direct dissent from that rule has been expressed there are cases which diverge from it by holding that the rule of *res ipsa loquitur* may be applied under proper conditions of pleading and proof. We need not concern ourselves with the soundness of this seeming exception to what seems to be the general rule for in the instant case the plaintiff not only alleged but with particularity and detail proved the specific act of negligence upon which he sought to base his recovery. Negligence in general terms was not alleged. Under this condition of the pleading and proof plaintiff cannot invoke the doctrine of *res ipsa loquitur.* (*Hall* v. *San Joaquin L. & P. Corp.,* 5 Cal. App. (2d) 755 [43 Pac. (2d) 856].)

It is conceded that defendant owed plaintiff the duty of providing a reasonably safe place in which to work. It is also firmly established by a great preponderance of authority that where an otherwise safe place to work had been rendered dangerous to an employee by an object falling on railroad tracks, or a hole or depression existing along the tracks, the plaintiff must prove actual or constructive notice of the condition to the employer before he can recover damages.

The case of *Frebes* v. *Michigan Cent. R. Co.,* 218 Mich. 367 [188 N. W. 424], is of persuasive force. In that case plaintiff was injured when a switch engine on which he was riding was derailed by an iron knuckle in a switch frog. In holding that the plaintiff could not recover because no negligence was proven, the court said: ''We have gone over this some-

what lengthy record with great care. We do not find in it any evidence of negligence on the part of the defendant. We agree with the trial judge when he said: 'The engine was derailed, and I assume that it was derailed because this knuckle was in this frog; it has not been shown that a single person in the employ of the defendant railroad company knew that that knuckle was there until a few seconds before the injury. Nothing has been shown by which the jury could infer, in my judgment, that by reasonable inspection the knuckle could have been observed in time to have averted the accident to the plaintiff. There is nothing in the case, as I have already said, that indicates that the defendant was not performing its full duty with reference to inspection, and we all know the fundamental rules with respect to the duty of an employer to inspect. It is fundamental that there must be either actual or constructive notice of the danger, and a reasonable opportunity given to the employer to remove it, before he can be charged with actionable negligence. I do not believe, gentlemen, that this case can go to the jury on the subject of the alleged negligence of the defendant, because in some way or other this knuckle got into this frog on this particular occasion.' "

The reasoning in the case of *Winslow* v. *Missouri K. & T. Ry. Co.*, (Mo. App.) 192 S. W. 121, is applicable here. In that case the plaintiff, a brakeman, was injured when he stepped into a hole in a path along a railroad siding belonging to the defendant. In holding that the plaintiff could not recover because no negligence was proven, the court said: "The evidence, however, is that this strip of ground was smooth and level, and plaintiff's evidence shows nothing to the contrary except as to the hole into which he says he jumped. Consequently, unless there is evidence tending to show defendant had actual or constructive knowledge of this particular hole, no negligence has been shown. . . . Conceding that the hole made the place not reasonably safe, plaintiff can recover only in case the defendant knew, or by the exercise of ordinary care might have known, of the presence of the hole in time to have removed it before the accident. Plaintiff's evidence, however, fails to disclose any actual knowledge of the hole; and as to whether defendant was negligent—that is, failed to exercise ordinary care to discover it—the evidence further fails to show that defendant had a

sufficient time in which to discover it, while at the same time it shows that it was of a character and so situated as not to be easily discoverable.''

It seems to be the established rule that in cases of this kind the railroad company should have either actual or constructive notice of the dangerous condition and that such condition must be shown to have existed for a sufficient time to permit its discovery and correction by the use of ordinary care. (*Chicago & N. W. Ry. Co.* v. *Payne*, 8 Fed. (2d) 332; *Atchison, T. & S. F. Ry. Co.* v. *Saxon*, (Tex. Civ. App.) 21 S. W. (2d) 686; Id., 284 U. S. 458 [52 Sup. Ct. 229, 76 L. Ed. 397]; *Foley* v. *New York, O. & W. Ry. Co.*, 97 N. J. L. 278 [116 Atl. 781].)

The rule seems to be thoroughly established by decisions of the federal courts that in cases of this kind the employee must affirmatively prove that the employer has been negligent, and the jury must not be permitted to speculate on that question. In *Patton* v. *Texas & P. R. Co.*, 179 U. S. 658 [21 Sup. Ct. 275, 45 L. Ed. 361], it was said: ''First. . . . The fact of accident carries with it no presumption of negligence on the part of the employer; and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence. (*Texas & P. R. Co.* v. *Barrett*, 166 U. S. 617 [17 Sup. Ct. 707, 41 L. Ed. 1136].) Second. That in the latter case it is not sufficient for the employee to show that the employer may have been guilty of negligence; the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for the conclusion. If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony; and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs. Third. That while the employer is bound to provide a safe place and safe machinery in which and with which the employee is to work, and while this is a

positive duty resting upon him, and one which he may not avoid by turning it over to some employee, it is also true that there is no guaranty by the employer that place and machinery shall be absolutely safe." (See, also, *Pennsylvania R. Co.* v. *Chamberlain*, 288 U. S. 333 [53 Sup. Ct. 391, 77 L. Ed. 819] ; *Chicago & N. W. Ry. Co.* v. *Payne, supra.*

When we apply the foregoing rules to the facts before us, we are forced to the conclusion that plaintiff failed to sustain the burden placed upon him of proving negligence on the part of defendant. The evidence fails in several particulars to prove negligence even though we assume that the nut that caused the trouble was from the brake rigging of one of defendant's cars. We are not informed when it fell or when it was removed from the brake rigging. It was rusty when found in the switch. The brake riggings on freight cars are exposed to the elements and iron so exposed will rust. We do not know when it got into the switch. Probably some time between the time of the accident and the morning of that day, for a brakeman had thrown the switch without trouble that morning. The switch was on the main line. We are not informed what traffic had passed over the switch during the day or how many times the switch had been thrown without trouble. We are not informed if the nut had been in the switch for a sufficient time so that it should have been discovered by the use of ordinary care. The freight train on which plaintiff was working had passed over the switch just before the accident. If we should indulge in speculation it is just as reasonable to assume that the nut dropped from that train as it would be to suppose that it had dropped from another. Privately-owned business houses adjoined the tracks. A path led by the switch. It is not unreasonable to assume that some person not employed by defendant dropped or threw the nut onto the tracks shortly before the accident. The evidence leaves us to speculate on the question of the negligence of defendant. As negligence was not proved the granting of the motion for nonsuit was proper and the judgment must be affirmed.

The plaintiff relies upon the following cases for a reversal of the judgment: *Baltimore & O. R. Co.* v. *Kast,* 299 Fed. 419, *Baltimore & O. R. Co.* v. *Flechtner,* 300 Fed. 318, *Thomas* v. *Southern Pacific Co.,* 116 Cal. App. 126 [2 Pac. (2d) 544], *Haskins* v. *Southern Pacific Co.,* 3 Cal. App. (2d) 177 [39

Pac. (2d) 895], and *Hackley* v. *Southern Pacific Co.*, 6 Cal. App. (2d) 611 [45 Pac. (2d) 447].

In the Kast case the employee was injured by tripping over the handle of a large wrench while traversing a path used exclusively by employees of the railroad company' in its enclosed yard. The wrench was of a type used exclusively by railroad employees. The court was of the opinion that these facts justified the reasonable inference that the wrench was negligently left in the path by a fellow employee. In the instant case there are no facts justifying a similar conclusion.

The Flechtner case involved an action for damages caused by an employee falling over a rusty hoop from a railroad spike keg which was lying between the tracks in a switching yard. The court was of the opinion that the evidence was sufficient to justify submission to the jury "of the question whether or not defendant had actual notice, or in the exercise of due care should have known in sufficient time to remove it, that the hoop was improperly there, and whether or not, because of its presence, the place was reasonably safe for its employees". The court also reached the conclusion that the answer to the question of whether the hoop was negligently left near the tracks by an employee or a stranger "was not a mere guess or determination of probabilities without evidence". Thus it will be observed that the court not only recognized but applied the rules we have announced earlier in this opinion. There is no conflict between the Flechtner case and the conclusions reached by us because of the material difference in the evidence in the two cases.

In the Thomas case the plaintiff had been injured when attempting to throw a switch clogged with sand which had been deposited in the switch by an engine belonging to the defendant. This fact alone distinguishes that case from the instant case because here we find no evidence justifying the conclusion that the nut had been placed in the switch by a person or instrumentality under control of or owned by defendant.

The Haskins case involved injuries to a brakeman who tripped over an umbrella plant growing along a switch of the defendant. The size of the plant indicated that it had reached a considerable age and had been growing there for a considerable time. Its character rendered unsafe the place

where the brakeman was required to work. Under these facts it was held that the defendant could, by the use of ordinary care, have discovered the danger prior to the accident and should have removed the weed.

In the Hackley case the employee was killed when he fell from the rear platform of a private car occupied by the superintendent of the Sacramento division of the Southern Pacific Company. The car was furnished for the exclusive use of the superintendent on a right of way inspection trip. The evidence fully justified the conclusion that the employee fell to his death through a trap in the rear platform of the car which had been negligently left open by the superintendent. This fact alone distinguishes that case from the instant case.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 24, 1936.