[Civ. No. 16662. Second Dist., Div. Three. June 20, 1949.]

G. DALE SPENCER, Appellant, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Respondent.

Hildebrand, Bills & McLeod and Booth B. Goodman for Appellant.

Robert W. Walker, H. K. Lockwood, Parker, Stanbury & Reese and Raymond G. Stanbury for Respondent.

VALLÉE, J.—Plaintiff appeals from a judgment entered on the granting of a motion for a directed verdict in an action under the Federal Employers' Liability Act (35 Stats. 65, 45 U.S.C.A. § 51 et seq.) providing that every common carrier by railroad engaged in interstate commerce shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, . . . or other equipment." (§ 51.)

Plaintiff claims to have been injured while throwing a spring switch on defendant's road in Daggett, California, situated in a desert country. A spring switch is one which holds the switch points against the rail by a spring. The ordinary rigid switch holds the switch points against the rail by means of rods. Each type of switch is operated with a lever handle. To throw the switch the handle is lifted and pulled on a stand until it locks. By pulling the lever of a spring switch a piston is forced through a cylinder of oil about the consistency of coal oil. The oil passes through a tiny hole in the collar of the piston. The only way the oil can pass from one side of the piston to the other is through the tiny hole. For this reason it is necessary to give the lever a slow, steady pull. If the lever is jerked or pulled suddenly the result is a rebound or a hard jerk.

A spring switch is standard equipment and made for one-man operation. It requires daily inspection. It has to be tested once a week because the spring tension has to be watched. To work properly it has to be cleaned and oiled so that the mechanism will slide smoothly. If a spring switch is neglected it is difficult to throw. If properly maintained and oiled it can be thrown by one man of ordinary strength. It is the duty of section foremen to see that spring switches are in

proper condition and to keep them clean and oiled. A spring switch is a little harder to throw than a rigid switch. Some of them are very hard to throw and require quite a bit of muscular effort. Whether a spring switch throws harder one time than another depends upon the condition of the plates.

Plaintiff went to work for defendant as a brakeman on May 10, 1945. He was on student trips until May 25, when he made his first run. He was instructed how to throw a spring switch. On June 23, 1945, while on a freight run he was injured. He testified: ''I unlocked the switch and attempted to throw it and I was unable to throw the switch. I had to call for help and there was another brakeman on the train and he came up and helped me to throw the switch.'' The two together threw the switch. In endeavoring to throw it, he followed the instructions which had been given him. When he first tried to throw it, he wrenched his back. He was not able to budge the switch then. When the other man helped him it required all of their strength. When he first went to throw the switch he ''merely lifted the switch lever and attempted to pull the switch around'' and it did not throw. He ''didn't jerk.'' He did not give it ''a jerk but a quick pull.'' Plaintiff worked out the run after the train left Daggett and continued working for defendant as a brakeman until July 9, 1945, when he sought medical aid.

The track superviser oiled the switch in question daily. He tested it daily by trying it on the reverse side, seeing that it was free from dirt, sand, any articles that might drop from trains and by seeing that it had oil in it. If it needed cleaning he cleaned it. He never heard of anything wrong with the switch except on August 11, 1945, when plaintiff's accident was first reported. The switch was not repaired between the day plaintiff claims to have been injured and August 11, 1945. On August 11, 1945, he inspected the switch and found it in good condition. The switch was also inspected once a week by the signal maintainer because the signal circuit comes through the switch box. In making the inspection he threw the switch. He testified that any spring switch is hard to throw. He had never found anything wrong with the switch during the year before or the year after June, 1945. He made a special inspection of the switch on August 11, 1945, after plaintiff had reported his accident and did not find anything wrong with it or the way it operated. A section gang was assigned to every 8 or 10 miles of track.

■ The rule governing the duty of the court on a motion for a directed verdict in actions under the Federal Employers' Liability Act is that "When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict. By such direction of the trial the result is saved from the mischance of speculation over legally unfounded claims." (*Brady* v. *Southern R. Co.*, 320 U.S. 476 [64 S.Ct. 232, 88 L.Ed. 239, 243] ; *Patton* v. *Texas & P. R. Co.*, 179 U.S. 658 [21 S.Ct. 275, 45 L.Ed. 361, 363].) The foregoing narration of the facts states the evidence and all inferences therefrom viewed in a light most favorable to plaintiff.

■ To recover under the act it was incumbent upon plaintiff to affirmatively prove that defendant was negligent and that such negligence was a proximate cause of the injury and liability cannot be predicated on mere speculation. (*Eckenrode* v. *Pennsylvania R. Co.*, 335 U.S. 329 [69 S.Ct. 91, 93 L.Ed. ——] ; *Reynolds* v. *Atlantic Coast Line R. Co.*, 336 U.S. 207 [69 S.Ct. 507, 93 L.Ed. ——] ; *Tennant* v. *Peoria & Pekin Union R. Co.*, 321 U.S. 29, 32 [64 S.Ct. 409, 88 L.Ed. 520, 524] ; *Brady* v. *Southern R. Co.*, 320 U.S. 476 [64 S.Ct. 232, 88 L.Ed. 239, 243].) ■ "Negligence" as used in the act is the violation by the carrier of its duty to use reasonable care in furnishing its employees with a safe place to work and safe tools and appliances with which to work. (*Bailey* v. *Central Vermont R. Co.*, 319 U.S. 350, 352 [63 S.Ct. 1062, 87 L.Ed. 1444, 1447].) Plaintiff says his theory is that he was injured by reason of the insufficiency of the switch due to negligence of maintenance, not upon the theory of defect. ■ Negligence must be proved whether the charge is that the equipment is defective or insufficient. (45 U.S.C.A. § 51 ; *Seaboard A. L. R. Co.* v. *Horton*, 233 U.S. 492, 501 [34 S.Ct. 635, 639, 58 L.Ed. 1062, 1069, Ann. Cas 1915B 475, L.R.A. 1915C 1].) In the latter case the court, referring to the clause of section 51 quoted *ante*, said (58 L.Ed. 1069) : "This clause has two branches; the one covering the negligence of any of the officers, agents, or employees of the carrier, which has the effect of abolishing in this class of cases the common-law rule that exempted the employer from responsibility for the negligence of a fellow employee of the plaintiff; and the other relating to defects and insufficiencies in the cars, en-

gines, appliances, etc. But, plainly, with respect to the latter as well as the former ground of liability, it was the intention of Congress to base the action upon negligence only, and to exclude responsibility of the carrier to its employees for defects and insufficiencies not attributable to negligence. The common-law rule is that an employer is not a guarantor of the safety of the place of work or of the machinery and appliances of the work; the extent of its duty to its employees is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the tools and appliances of the work may be safe for the workmen. [Citations.] To hold that under the statute the railroad company is liable for the injury or death of an employee resulting from any defect or insufficiency in its cars, engines, appliances, etc., however caused, is to take from the act the words 'due to its negligence.' The plain effect of these words is to condition the liability upon negligence; and had there been doubt before as to the common-law rule, certainly the act now limits the responsibility of the company as indicated.'' ■ The fact of accident does not carry with it any presumption of negligence on the part of the carrier (*Patton* v. *Texas & P. R. Co.*, 179 U.S. 658 [21 S.Ct. 275, 45 L.Ed. 361]), nor does mere proof of insufficiency of the switch at the time of the accident establish negligence.

■ There is no duty on the carrier under the Federal Employers' Liability Act to anticipate the misuse of equipment or to guard against the consequences of misuse. (*Brady* v. *Southern R. Co.*, 320 U.S. 476 [64 S.Ct. 232, 88 L.Ed. 239, 243]; *Lowden* v. *Bowen,* 199 Okla. 180 [183 P.2d 980].)

■ It is settled that where an otherwise sufficient piece of equipment has been rendered insufficient and dangerous to an employee the plaintiff must prove actual or constructive notice of the condition to the employer before he can recover damages. (*Patton* v. *Texas & P. R. Co.*, 179 U.S. 658 [21 S.Ct. 275, 45 L.Ed. 361, 365]; *Matthews* v. *Southern Pac. Co.*, 15 Cal.App.2d 36, 42 [59 P.2d 220]; *Wilson* v. *Missouri Pac. R. Co.*, 319 Mo. 308 [5 S.W.2d 19, 21], cert. den. 278 U.S. 622 [49 S.Ct. 25, 73 L.Ed. 543]; *Winslow* v. *Missouri K. & T. Ry. Co.* (Mo.App.) 192 S.W. 121; 56 C.J.S. § 244, p. 1000.)

■ Plaintiff could recover only in case the defendant knew, or by the exercise of ordinary care should have known, of the condition of the switch as described by him in sufficient time to have corrected it before the accident. Unless there is evidence tending to show that defendant had actual or con-

structive notice of the condition of the switch, negligence has not been proved. There is no evidence of actual notice. Whether defendant had constructive notice of the condition of the switch on the day of the accident depends upon whether it was in that same condition for a sufficient length of time that it reasonably could be inferred that defendant had such notice. There is no evidence that the switch was in the condition described by plaintiff at any time other than on the occasion he says he was injured. The evidence is that it was in good operating condition at all times. There is no evidence that a single person in the employ of defendant knew prior to the accident that the switch could not be thrown by one man. The switch was inspected daily. It had been used for some time before plaintiff's injury and was used thereafter without difficulty. Manifestly defendant had no reason to anticipate that because the spring switch was harder to throw than a rigid switch, the use of the spring switch would result in an injury to an employee throwing the switch. Defendant was not negligent in failing to foresee such possible injury. There is no evidence of ''negligence of maintenance.''

In *Lowden* v. *Bowen,* 199 Okla. 180 [183 P.2d 980], it was held that negligence was not proved because a flat car pushed by the plaintiff was worn and harder to push than other flat cars in better condition. In *Matthews* v. *Southern Pac. Co.,* 15 Cal.App.2d 36 [59 P.2d 220], the plaintiff was injured in throwing a switch. He testified that after sustaining the injury he found a large rusty railroad nut lying on the plate of the switch. A judgment of nonsuit was affirmed on the ground that there was no evidence that the railroad had actual or constructive notice of the condition of the switch and hence no proof of negligence.

In the case at bar there is no evidence and no inference that can reasonably be drawn from the evidence that defendant knew or in the exercise of ordinary care should have known of the insufficiency of the switch.

Plaintiff relies on the following cases for reversal: *Tennant* v. *Peoria & Pekin Union R. Co.,* 321 U.S. 29 [64 S.Ct. 409, 88 L.Ed. 520] ; *Bailey* v. *Central Vermont R. Co.,* 319 U.S. 350 [63 S.Ct. 1062, 87 L.Ed. 1444] ; *Lavender* v. *Kurn,* 327 U.S. 645 [66 S.Ct. 740, 90 L.Ed. 916] ; *Baltimore & Ohio R. Co.* v. *Kast,* (6 Cir.) 299 F. 419 ; *Baltimore & Ohio R. Co.* v. *Fletchner,* (6 Cir.) 300 F. 318 ; *Haskins* v. *Southern Pacific Co.,* 3 Cal.App.2d 177 [39 P.2d 895], and *Thomas* v. *Southern*

*Pacific Co.*, 116 Cal.App. 126 [2 P.2d 544]. No one of these cases is analogous. In each negligence was affirmatively proved.

Judgment affirmed.

Shinn, P. J., and Wood, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 18, 1949. Carter, J., voted for a hearing.