**ATLANTIC COAST LINE RAILROAD COMPANY, Appellant,**

v.

**M. E. COLLINS, Appellee.**

**No. 7218.**

United States Court of Appeals
Fourth Circuit.

Argued June 12, 1956.
Decided July 21, 1956.

Douglas McKay and Julius Walker McKay, Columbia, S. C. (E. Ellison Walker, and McKay, McKay, Black & Walker, Columbia, S. C., on brief), for appellant.

Thomas J. Lewis, Atlanta, Ga., and R. K. Wise, Columbia, S. C. (Thomas J. Lewis, Jr., and Lewis & Lewis, Atlanta, Ga., on brief), for appellee.

Before SOPER, Circuit Judge, and BARKSDALE and BRYAN, District Judges.

SOPER, Circuit Judge.

This suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. was brought by M. E. Collins, a switchman in the employ of the Atlantic Coast Line Railroad Company, to recover damages for injuries to his back which he suffered while throwing a switch on the evening of September 27, 1954, in the railroad yard at Florence, South Carolina. He experienced a sharp pain in his back, fell to the ground, and was taken to a hospital where he stayed eleven days and was attended by railroad physicians. Since that time he has been given various treatments, he has worn a brace, and an operation has been suggested but has not been performed. There seems to be trouble with a disc in the lumbar region between the fourth and fifth vertebrae, and although his condition was somewhat improved at the time of the trial on March 12, 1956, he still suffers some pain and has been unable to return to railroad work. On submission to the jury a verdict was rendered in his favor of $17,625.00.

The case comes before this Court on appeal from the refusal of the District Judge to direct a verdict in the defendant's favor, and his refusal after verdict to enter judgment for the defendant *non obstante veredicto*. The sole question is whether there was sufficient evidence of negligence on the part of the railroad company to take the case to the jury. Collins was a young man, 28 years of age. He had been in the service of the railroad company since January 4, 1951, and had spent most of the time as a switchman in the Florence yard. He went to work in the yard at 4:00 P.M. on the day of the accident and was stricken at 7:00 P.M. when he was endeavoring to operate the main lead switch. This device was of the standard type customarily used by railroads and consisted of a strong iron bar or lever, to the end of which was attached a heavy ball or oblong weight which rested on the ground when the switch was in position. To operate the switch the lever is moved to either side and is firmly latched under some tension in the horizontal position so as to maintain the tracks in place. To perform the operation it is customary to disengage the latch on one side with the foot, so that the tension is released and the lever rises a few inches from the ground, and then to lift the lever to a vertical position by hand and push it down to a horizontal position on the other side and latch it with the foot. Thereby the pointed rails of the switch, or "switch points" as they are called, are moved into the desired position and held against the railroad track under tension. During this switching operation the switch points move over plates which are lubricated with graphite to facilitate their movement.

Collins testified that it was his purpose at the time of the injury to release the switch lever, which was latched on the left side, and move it from left to right; and that after releasing it with his left foot he took hold of the ball with one hand and raised it to a height of 8 or 10 inches from the ground when it "frost more or less * * * it stopped". He then placed his lantern on the ground and using both hands tried to bring the lever to a vertical position, but just as he straightened up it stopped and he was struck with a stabbing pain in the back and fell to the ground. His fellow workmen observed him and came to his aid. When he fell the lever was in the upright position and the switch points were still open and he told his colleagues to lock the switch because the engineer of the train was waiting, and they did so in his presence. He also testified that on the same evening he had previously operated the same switch a dozen times before 4:00 and 7:00 o'clock, seemingly without difficulty. The whole case for the plaintiff is based upon his testimony that on the occasion of the injury the switch was hard to operate. The only other witness on his behalf as to the operation of the switch testified that he was off duty on the night of the injury but that before and after September 27 he had operated the same switch and found that it "throws harder" than other switches in one direction, especially in latching it; and he enumerated a number of things that might have caused this condition including lack of lubrication, the fouling of the cogs inside the housing, sand on the plates on which the points slide or the fouling of the rod that runs from the lever to the points themselves. However, the witness added that there were other switches which were hard to operate and that he had never reported the switch in question; and no evidence was offered to show that any of the conditions enumerated by him as possible causes actually existed at the time of the injury. Nor was any explanation offered as to the testimony of the plaintiff himself that he had operated the same switch successfully on a dozen previous occasions that night, and that his colleagues completed the throwing of the switch in his presence after the injury.

The uncontradicted evidence on the part of the defendant was that the switch in question was a key switch in the yard and that it was operated more than fifty times a day; and that it was successfully thrown fifteen times or more the same night without change by other switchmen between 7:00 and 12:00 P.M. after the plaintiff was injured. There was also evidence that this particular switch was examined by the roadmaster the same night about 10:00 P.M. after the accident and he found that it moved easily in either direction. It was also shown without dispute that no two switches are exactly alike in operation; and that every week all the switches in the yard were checked and lubricated by a section force of four or five men in charge of a foreman and that this particular switch was examined and lubricated and found to be in good condition the Friday previous to the Monday when the accident occurred.

Upon consideration of the whole evidence it cannot be said that the plaintiff has offered sufficient testimony to show that his injuries were caused by the railroad's neglect. His contention is that conflicts in the evidence required the submission of the case to the jury. There are, however, no conflicts upon the essential points in the inquiry. Minor discrepancies are found as to whether the switch worked easily in both directions or was harder to throw or latch in one direction than in the other; but, as we have seen, there is no dispute that the switch was operable by switchmen of like experience and skill and was actually operated on the same evening, both before and after the injury occurred.

In the last analysis the plaintiff's case rests upon the contention that negligence on the part of the railroad company must be inferred from the mere happening of the incident. He says in effect, that since it was so hard to lift

the lever of the switch to the upright position that he hurt his back, the switch mechanism must have been defective, and the railroad company was negligent in furnishing it. But this simple statement leaves out of account other material features of the evidence on his behalf which must be taken into consideration. He also showed that the switch was operated many times each day, that he himself had operated it a dozen times on the night that he was hurt;[1] and that neither he nor his companion, who had operated it on previous occasions and found it harder to use than some other switches, had ever complained of its condition to their superiors. This testimony taken in the light most favorable to the plaintiff may give rise to the speculation whether the injury was due to a defective switch of the railroad company or to the defective back of the man; but speculation is not enough. " 'The essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inference favoring the party whose case is attacked.' " Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 32, 64 S. Ct. 409, 411, 88 L.Ed. 520.

■ Moreover, there is a complete lack of any evidence to show that the mechanism, which had been in constant and effective use, had been reported to the company as defective previous to the injury. Actual or constructive notice that a sufficient piece of equipment has become defective or dangerous through use must be shown to establish negligence on the part of the employer before an injured employee can recover damages. See the very similar case of injury suffered during the operation of a railroad switch in Spencer v. Atchison, T. & S. F. Ry. Co., 92 Cal.App.2d 490, 207 P.2d 126.

■■ The general rule as to the probative evidence to be applied in cases under the Employers' Liability Act is set out in Brady v. Southern Ry. Co., 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239, as follows:

"The weight of the evidence under the Employers' Liability Act must be more than a scintilla before the case may be properly left to the discretion of the trier of fact—in this case, the jury. * * * When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict. By such direction of the trial the result is saved from the mischance of speculation over legally unfounded claims."[2]

■ The case is stronger for the railroad company if the doctrine of res ipsa loquitur is applied and if the uncontradicted explanatory evidence offered by the railroad company is taken into account, as we think it may be in this case. That evidence shows that the switch worked perfectly on the same evening after the plaintiff was injured, and that it was regularly inspected and lubricated, and that no defects in the switch had been reported. In view of this undis-

1. The testimony of the plaintiff that the switch was operable for several hours before he was hurt is in accord with testimony of defendant's witnesses that the switch was operable for several hours after the accident. This agreement in the testimony was not found in Chicago, M., St. P. & P. R. Co. v. Linehan, 8 Cir., 66 F.2d 373, upon which appellee relies.

2. It should be noted that the present suit is based upon the provisions of 45 U.S.

C.A. § 51 making carriers by railroad liable for injuries to employees resulting from the negligence of the carrier and is not brought under the Safety Appliance Section, 45 U.S.C.A. § 11, where an injured employee may recover by proving injury from a defective appliance without proof of negligence on the part of the carrier. Myers v. Reading Co., 331 U.S. 477, 67 S.Ct. 1334, 91 L.Ed. 1615.

puted testimony, it is plain that there was no reasonable basis for the submission of the question to the jury. The rule in such cases is well stated in Baltimore & O. R. Co. v. O'Neill, 6 Cir., 211 F.2d 190, 194:

"Under the rule the burden of proof does not shift from the plaintiff to the defendant, and if the plaintiff offers no evidence pertaining to the issue of negligence other than the facts of the occurrence of the injury, and the explanatory facts are sufficient to rebut the inference, the plaintiff fails to meet the burden and fails to make a case. Sweeney v. Erving, supra, 228 U.S. [223] at page 241, 33 S.Ct. [416], at page 418 [57 L.Ed. 815]. Where the explanatory evidence is contradictory or of such a character as to justify different inferences as to defendant's exercise of due care, it is for the jury to determine whether the inference of negligence has been rebutted by the explanatory evidence. But where the possible inference of negligence is clearly overcome by undisputed evidence free from any reasonable adverse inference, or where the uncontradicted explanatory facts establish non-liability as a matter of law, it is the duty of the court to direct a verdict for the defendant. The application of the rule does not change the general rule that where the evidence as a whole is insufficient to support a verdict for the plaintiff, defendant's motion for a directed verdict should be sustained."

See also Wadiak v. Illinois Cent. R. Co., 7 Cir., 208 F.2d 925; Terminal R. Ass'n of St. Louis v. Staengel, 8 Cir., 122 F.2d 271, 136 A.L.R. 789.

The judgment of the District Court will be reversed and the case remanded with directions to enter judgment in favor of the defendant.

Reversed and remanded.